STATE EX REL. STATE HIGHWAY COMMISSION OF MISSOURI (PLAINTIFF), RESPONDENT, v. GEORGE W. BAUMHOFF, TAYLOR R. YOUNG, ISABELLE BAUMHOFF ET AL. (DEFENDANT), APPELLANT.—93 S. W. (2d) 104.

St. Louis Court of Appeals. Opinion filed April 7, 1936.

Motion for rehearing denied April 28, 1936.

*Louis V. Stigall* and *Ralph M. Eubanks* for respondent.

*Stephen A. Boggiano* and *P. H. Cullen* for appellants.

1034

HOSTETTER, P. J.—This suit was instituted by the State Highway Commission of Missouri on the 12th day of August, 1930, in the Circuit Court of St. Louis County, the general object and purpose of said suit being to condemn a strip of land varying in width from 115 to 145 feet and running diagonally through an eighty-acre tract of land owned by the three defendants, an undivided one-third being owned by each. Said eighty-acre tract is the East one-half of the Southwest quarter of Section 14, Township 44 North, Range 5 East in St. Louis County, Missouri. The object of the condemnation proceedings was to use the strip of land for the construction of a part of what is known as Traffic Relief Route No. 66.

The west line of defendants' eighty-acre tract is 350 feet east of the Meramec River, at a point where the present U. S. Highway No. 66 crosses the said river in St. Louis County, adjacent to the limits of the City of Kirkwood. The lengths of the east and west lines of defendants' tract of land are each 2640 feet, while the lengths of the north and south lines are each 1320 feet. The total area of the condemned strip is 6.21 acres and it entered the eighty-acre tract from the east about 780 feet south of the Northeast corner of the tract and emerged about 145 feet north of the Southwest corner. The distance traversed by the condemned strip is 2050 feet.

Three commissioners were appointed by the circuit court, who, after viewing the property, filed their report in court on September 27, 1930, in which they awarded defendants the sum of $2018.25 as damages. Exceptions to this report were filed by defendants, and the award of this set of commissioners was set aside, and, a new commission was appointed by the court, which, after viewing the property, on November 15, 1930, filed its report, allowing the defendants $542 damages. To this report defendants filed exceptions also and the cause was tried before the court and a jury and concluded on the 4th day of November, 1931, resulting in a verdict of the jury in favor of the plaintiff and against the defendants, allowing no damages.

Thereupon judgment was entered upon the verdict and defendants in due time filed their motion for a new trial, which, being overruled, the cause was brought by appeal to this court for review.

No public road ran through or touched the eighty-acre tract in controversy. The eighty-acre tract was surrounded by the lands of other owners. The elevation at the north line of the eighty-acre tract is approximately 135 feet, and, at the south line 185 feet, above a valley running somewhat south of west, extending from the Meramec

River through the center of the tract and varying in width from approximately 200 feet at the east line to about 500 feet at the west line.

The land gradually sloped from the crest of the hills on the north and south lines of the tract to said valley. The north forty was rather heavily timbered with large oaks and about one-half of the south forty had been in cultivation and the remaining half was timbered, similar to the other forty. The site of an old farm house was located on the center line of both forties, and, about 400 feet west of the east line of the tract and directly in the center of the condemned strip.

A private road, entering the tract from other lands, reached this old farm house and ran in the valley near the center of the tract, along a ravine, crossing it on a bridge still in use at the time of the beginning of the present suit.

The condemned strip enters from the west at an elevation seventy feet about the valley separating the north and south forties. There is a number of cuts and fills from one end to the other along the entire strip taken, varying in height and depth of from one to forty-eight feet, the deepest cut being twenty-three feet and the highest fill being forty-eight feet.

The condemned strip leaves the eighty-acre tract at its east line at an elevation of thirty feet above the valley.

It was necessary that a number of large oak trees be cut down before the commencement of the construction of the highway. It was shown that the condemned strip crossed the old private road with a fill of thirty feet and no underpass was constructed thereunder, whereby it was claimed by defendants that there was no adequate means of ingress and egress between the north and south portions of the eighty-acre tract without the construction of a new road.

The defendant landowners claimed damages for the taking of the 6.21 acres for the right of way of the highway and the shape of the remainder of the tract, due to cuts and fills, growing out of the diagonal course of the appropriated strip and for depreciation to the remainder of the eighty acres.

George W. Baumhoff, one of the three owners, testified on behalf of the defendants that in his opinion the property was damaged anywhere from $26,776.25 to $32,621. He, however, testified that the entire eighty acres was purchased by him and the other two defendants about one year prior to the time of the taking by the Highway Commission for $16,000 or $200 per acre.

Taylor R. Young, another one of the co-owners, testified that in his opinion the total damages to the property amounted to $15,280 and confirmed the statement of George W. Baumhoff that the property had been purchased by him and his associates at $200 per acre, amounting to $16,000 for the entire tract.

S. A. Horine, a witness for the defendant land owners, testified that

in his opinion the eighty acres was worth $1000 per acre before the construction of the highway and only $175 per acre afterwards, making a total damage of $67,000. This witness, under cross examination, lowered his estimate of total damages to the tract to $64,000; he clearly evinced a vivid tendency toward exaggeration, which, under proper cultivation, might, in time, rival a similar tendency possessed by the famed Baron Munchausen.

Emil A. Fuszner, a witness for the landowners, testified that in his opinion the eighty-acre tract was worth $700 per acre before the taking and that after the taking the south forty was not worth more than $300 per acre and the north forty not over $350 per acre, leaving a total damage of approximately $30,188.50.

S. C. Harvey, a witness called on behalf of plaintiff, testified that he had been eight years engaged in the real estate business in St. Louis County and was familiar with the eighty acres in controversy. He testified that the reasonable market value of the eighty acres at the time of the taking was $228 per acre and that the property was damaged by the taking in the sum of $926.88 and that the tract was specially benefited by its access to the newly constructed highway.

Arthur G. Taylor, another witness on behalf of plaintiff, testified that he had been in the real estate business for some years in St. Louis County and was familiar with the property in controversy; that the reasonable market value of the entire eighty acres prior to the condemnation was $200 an acre, aggregating $16,000; that the reasonable market value of the strip actually appropriated for the right of way purposes was $1242; that in his opinion the appropriation and construction of the highway did not cause any damage to the remainder of the property, but that the remainder, to-wit: the 73.79 acres, was specially and peculiarly benefited by the construction of the concrete road over and across it to the extent of $25 an acre.

It was also shown by witnesses that the construction of the highway through the eighty acres in controversy brought that tract of land closer to the city limits of St. Louis than it was prior to the construction of same.

Only two instructions, numbers one and twelve, were given by the court, both being on behalf of the plaintiff. The defendants asked no instructions.

The jury returned a verdict in favor of the plaintiffs, upon which judgment was rendered, and, after an ineffective motion for a new trial, defendant landowners bring the cause by appeal to this court for review.

One of the grounds assigned by defendants as error is that the trial court refused to give and read to the jury an instruction on behalf of defendants in the nature of a peremptory instruction to find a verdict in their favor. There is no such instruction in the

record, either asked or refused. We find a statement contained in defendants' brief which affords some information as to why such complaint was made, which reads as follows:

"Unfortunately, the court files in this case have become lost or destroyed, thereby placing an additional burden upon counsel for both sides in presenting the matter to this Honorable Court. As a result thereof, the instructions offered at the trial of said cause are not available with the exception of Plaintiff's Instructions Nos. 1 and 12, which were preserved by being incorporated in defendants' memoranda in support of their motion for new trial. Therefore, through necessity, defendants will confine themselves insofar as the instructions are concerned, to the two instructions of plaintiff referred to above."

We, of course, are limited in our review to matters contained in the printed abstract of the record.

Defendants' complaints, boiled down, are as follows:

Complaint against instructions 1 and 12, given by the court on behalf of plaintiff, and the complaint as to the action of the trial court in refusing to set aside the verdict for alleged prejudice, partiality and passion on the part of the jury and in refusing to permit witnesses for the defendants to answer questions propounded to them in regard to the cost of grading necessary to bring the property to the grade of the highway. We set out the two instructions 1 and 12 under attack on this appeal as follows:

"Instruction No. 1.

"You are instructed that the defendants are entitled to receive just compensation for any damages they may suffer as a result of the location and construction of State Highway No. 66TR, and that such just compensation may be received either in the form of money or in the form of special benefits, or in the form of both. In arriving at your verdict you may consider the quantity and market value of the land taken from the defendants for State Highway No. 66TR, and the damage, if you should find there is any damage, to the remainder of defendants' tract, by reason of the location and construction of said state highway through it, and from the sum of these, if any, you shall deduct the special benefits, if any, to the defendants arising from the presence of said state highway on said land."

"Instruction No. 12.

"The Court instructs the jury that in this case the burden of proving damages rests upon the defendants. Unless damages such as those defined in other instructions have been proved by a preponderance or greater weight of the credible evidence, none should be considered."

The verdict of the jury is attacked by the defendants on two grounds, first, that it is so manifestly unjust that it cannot be accounted for on any theory other than bias, prejudice, partiality

or mistake, and that it is against the weight of the evidence and against all of the evidence given at the trial.

Preliminary to a discussion of the points raised by defendant landowners in the instant case we feel that it might be profitable and tend to a clarification of the questions involved, to insert some views expressed by our Supreme Court en banc in the case of State ex rel. Highway Commission v. Jones, 321 Mo. 1154, which outlines in a general way the determinative issues in a case of this character. In said opinion the court quotes approvingly the instruction given and uniformly approved in railroad condemnation proceedings, its approval being so frequent and pronounced that it is claimed that it has "become a classic," viz.:

"In estimating the damages to the land in controversy, the jury will consider the quantity and value of the land taken by the railroad company for a right-of-way and the damages to the whole tract by reason of the road running through it; and deduct from those amounts the benefits, if any, peculiar to the said tract of land, arising from the running of the road through the same. And by peculiar benefit to that land, is meant, such benefits as that land derives from the location of the road through it, as are not common to other lands in the same neighborhood." [Quincy Railroad Co. v. Ridge, 57 Mo. l. c. 601.]

The court, in said opinion, then proceeds to give its views in regard to the distinction between general benefits and special benefits and quotes approvingly from other authorities, as follows:

"General benefits, those accruing to the owners of property in a neighborhood or vicinity generally, are not deductible from the damages; to make such a deduction would be to require the landowner whose property is taken in part to liquidate his damages by contributing his share of the benefits which inure to the public as a whole. Special benefits stand on a different footing; they are such as accrue directly and proximately to the particular land remaining by reason of the construction of the public work on the part taken. Such benefits must of course be reflected in an increase in the market value of the land.

"While there is often a contrariety of opinion as to whether the benefits in specific instances are general or special, the general distinction is well understood. 'A general benefit is an advantage not peculiar to the remainder of a tract part of which is taken, but conferred by the public work upon all property within range of its utility.' [Randolph, Em. Dom., sec. 269, p. 250.] It is also well settled that a benefit, though conferred upon several tracts of land similarly situated, may nevertheless be a special and not a general benefit.

"A special benefit is an advantage conferred upon a tract by reason of the maintenance of public work on it—an advantage differing in

kind, or at least in great degree, from a general benefit. But it is to be noted, that an advantage is none the less a special benefit because it is conferred upon all the tracts of land upon which the public work is constructed. Indeed, a benefit may be special, although it is conferred also upon land not taken. Thus, where a street is widened by the condemnation of a strip of land along one side, the owner cannot complain because his remaining land is charged with a benefit which the widening necessarily confers upon lots on the' opposite side. [Randolph, Em. Dom., sec. 270, p. 251.] . . . .

"We come now to the specific question: Does an improved street or highway, by reason solely of its physical proximity to adjacent lots or tracts of land, confer upon such lots or tracts, a special benefit? Under exceptional circumstances it may not; but that it ordinarily does is unquestionably the generally accepted view.

"In 20 Corpus Juris, page 824, note d., it is said: 'When the land is taken for the laying out or widening of a way, there are two kinds of benefit which the remaining land may receive. The special and direct benefit arising from its position on the way; and the general benefit not arising from its location on the way, but from the facilities and advantages caused by the way. The direct and peculiar benefit may be considered, while the general benefit cannot be.' . . .'

"In 2 Lewis on Eminent Domain (3 Ed.), section 702, page 1216, the author says: 'The benefits resulting from opening a street through property, whereby additional frontage is created or it is rendered more accessible, are special. . . .' . . .

"The law is thus stated in quotation from Wilson v. Greenville Co. (S. C.), 96 S. E. 301, appearing in 20 Corpus Juris, page 825, note 90: 'These special benefits usually find concrete expression in a comparatively greater increase in the value of such lands, though that may not be, and often is not, the only special benefit which they enjoy. But certainly, to the extent that the benefits accruing to those who own lands on the highway exceed those of their neighbors whose lands are off the highway, they are special. A benefit that is limited in enjoyment to one or more persons is special to him or them. Therefore the fact that all persons who own lands adjacent to the road enjoy special benefits does not make such benefits general. A special benefit to one tract on the highway does not become general because a like benefit is enjoyed by many tracts that are also contiguous to the highway. The benefit accruing to each tract is special to it.' "

So that, tersely stated, the rule is, that the landowners are entitled to receive just compensations for any damages they may suffer and that the burden of proving such damages rests upon them. The damages may be offset in special benefits as distinguished from general benefits and the burden of proving the special benefits rests upon the condemnor, in this instance, the State Highway Commission. The

damages necessarily carry with them the value of the strip of land so appropriated by the condemnor together with such damages as the remainder of the tract may suffer by reason of the appropriation of a strip thereof. Then, if the amount of the damages exceeds the amount of special benefits, the landowner is entitled to the difference in a money judgment. If the special benefits proven exceed the total damages proven, then, necessarily the landowner may recover nothing other or further than the special benefits, resulting in such a verdict as was returned by the jury in the instant case. It necessarily follows that if there is any substantial evidence to support such a verdict this court will not interfere with the ruling of the trial court thereon. The weight of the evidence is a matter for the jury and the trial court. [Vormehr v. Knights of Maccabees, 198 Mo. App. 276, l. c. 281, 200 S. W. 76; Kent v. L. B. Price Mercantile Co. (Mo. App.), 17 S. W. (2d) 983, l. c. 985; Ziegler v. Schwach (Mo. App.), 39 S. W. (2d) 446, l. c. 448; Buehler v. Baum (Mo. App.), 71 S. W. (2d) 851, l. c. 856.]

While most of the witnesses who were interrogated on the question of damages and special benefits testified that the damages exceeded the special benefits in varying amounts, witness Arthur G. Taylor, called by the plaintiff, testified in effect that the special benefits exceeded the damages in the sum of $602.75, and, on being interrogated as to what he had taken into consideration in arriving at that conclusion, answered as follows: "The fact that the property now is accessible to the outside, accessible to a public road;" and further, that after the construction of this highway, the property was adaptable for use as country home sites in five or six-acre tracts.

The testimony of said witness is, in and of itself, substantial evidence that the property has been specially benefited by the construction of the highway in an amount in excess of the total damages sustained. In addition thereto, it appears that the jury itself was accorded the privilege of viewing the property. The proposition to permit the jury to view the property and look for itself was made by defendants' counsel and by agreement of counsel on both sides the court gave its permission for the jury to go on the property and view it just as the commissioners who were originally appointed by the court did in bringing in their conclusions as to damages and special benefits. So, that, the jury was in a peculiarly exceptional position to pass on the questions of damages and special benefits. They were afforded all the light that the commissioners had, plus the testimony of witnesses at the trial, giving their opinions as to the amount of damages and the amount of special benefits. While the jury must consider the testimony adduced at the trial, yet where they get the benefit of such testimony, and, the jury itself views the premises, they have an additional qualification, which they may properly avail themselves of, in reaching their conclusion. If the jury

were not permitted to use the information obtained by them in an ocular inspection and examination of the premises alleged to be damaged or specially benefited, what good purpose would be subserved by permitting them to view the land?

In the case of City of Kansas v. Baird, 98 Mo. 215, l. c. 218, the court said: "Why send them to examine the property unless it be that they are to make use of the information thus acquired? The jury should not be told that they may disregard the evidence before them. . . . But they may give to the evidence such weight as they believe it entitled to receive; and in fixing the damages and benefits, they may also act upon their own knowledge and judgment."

In City of Kansas v. Butterfield, 89 Mo. 646, l. c. 650, the court said: "Juries would be very little fit for the high and responsible office to which they are called, especially to make an appraisement which depends on knowledge and experience, if they might not avail themselves of these powers of their minds when they are most necessary to the performance of their duties."

Views of similar import are found in the following cases, viz.: City of Kansas v. Street, 36 Mo. App. 666, l. c. 668; City of St. Louis v. Lanigan, 97 Mo. 175, l. c. 178, 10 S. W. 475; Kansas City v. Bacon, 147 Mo. 259, l. c. 279, 48 S. W. 860; Hoyberg v. Henske, 153 Mo. 63, l. c. 74, 55 S. W. 83; Kansas City v. Morris, 276 Mo. 158, l. c. 168, 169, 207 S. W. 503; Kansas City v. Jones Store Co., 325 Mo. 226, 28 S. W. (2d) 1008, l. c. 1016; C. R. I. & P. Ry. Co. v. Hosman, 227 Mo. App. 659, 57 S. W. (2d) 434, l. c. 437.

None of the cases cited by defendants' counsel is authority for the proposition that because the land actually appropriated for the highway is valuable that the landowner is entitled to money damages regardless of the amount of special benefits; that the landowner's damages for the value of the property taken and the damages to the remainder of his property, may be offset by special benefits is settled by the following cases: Newby v. Platte County, 25 Mo. 258; St. Joseph v. Geiwitz, 148 Mo. 210, l. c. 217, 49 S. W. 1000; State ex rel. State Highway Commission v. Day, 226 Mo. App. 884, 47 S. W. (2d) 147, l. c. 149.

Defendants urge that plaintiff's Instruction Number 1 is erroneous in that no time was fixed when the value of the strip appropriated was to be estimated. There is no question but what under the authorities the damages and the special benefits are to be determined as of the time of the taking of the landowners' property. The instruction does not name any particular date, but an examination of the testimony shows that the witnesses were interrogated about and had in mind the dates in August, 1930, or thereabouts. The trial was concluded on the 4th day of November, 1931, a little more than a year after the genesis of the proceedings and, from the nature of the questions asked and the answers returned, it is very apparent that the wit-

nesses' testimony related to the time at or near the beginning of the controversy when the first two sets of commissioners were appointed and not to the date of the trial.

No objection was made during the taking of the testimony that the witnesses were giving their opinions and views as of a wrong date. There was no showing, or attempt to show, that there was any difference between the valuations as of a date at the beginning of the proceedings, which coincided with the time of the taking of the strip, and any subsequent date between that and the date of trial. So that there was nothing to prejudice the defendants in that respect. The instruction, having fixed no date, did not create a case of misdirection, but merely one of nondirection. A similar situation was dealt with in the case of State ex rel. Kibble v. First National Bank (Mo. App.), 22 S. W. (2d) 185, l. c. 190, wherein the court said:

"The complaint is made that no date for fixing the value of the property is stated. It was held by this court that the jury should be told in express and unambiguous language that the value should be ascertained as of the time of the taking, not at the time of the trial or at times between the seizure and trial. [State v. Ryley, 76 Mo. App. 412.] However, the evidence in this case as to the market value of the various items of personal property was as to the value at the time of the taking. If the jury paid any attention to the evidence of value at all, it based its finding upon the value as to the time of the taking. Under such circumstances we cannot see how the jury could have been misled by the failure to instruct that the reasonable market value was to be fixed as of that date. If defendants feared that the jury might go outside of the evidence to fix the value as of some other date, it should have requested a clarifying instruction which would have removed the doubt."

If the defendants felt that the jury might fix the value as of sometime other than the time of the taking of the strip they should have asked a clarifying instruction. [Brouster v. Shell Pipe Line Corp. (Mo. App.), 16 S. W. (2d) 672, l. c. 674; Klaber, Admr. of Jamison, v. Kansas City, 223 Mo. App. 684, 17 S. W. (2d) 621, l. c. 629; Walk v. St. Louis Can Co. (Mo. App.), 28 S. W. (2d) 391, l. c. 393; Reed v. Cullor (Mo. App.), 32 S. W. (2d) 296, l. c. 298; Kemp v. Doe Run Lead Co. (Mo. App.), 57 S. W. (2d) 758, l. c. 762.]

Complaint is also made against plaintiff's Instruction No. 1, that it used the word "may" instead of "will" or "shall" in that portion of the instruction telling the jury that in arriving at their verdict they "may consider the quantity and market value of the land taken," etc. The point urged is that the word "may" is often used in the permissive sense, whereas, the words "will" or "shall" have a stronger meaning.

It is disclosed that the witnesses gave testimony as to the damage on

two distinct principles, one witness stated his opinion of the value of the land taken and the depreciation in value of the remaining portion of the tract; another witness gave his opinion of the market value of the whole tract before the improvement was made and of the whole tract after it was completed. Both ways of arriving at the damages were proper for the consideration of the jury and either might have been followed by the jury in arriving at its verdict. One way is that the measure of damages may be the value of the land taken and the damages, if any, to the tract of which it forms a part, from which must be deducted special benefits. Another way the damages may be estimated is by taking the reasonable market value of the entire tract in its original state before the improvements were made and the reasonable market value of the entire tract after the improvements were made and the difference will determine the amount to which the landowner is entitled. Either of these methods is proper under the rulings of our courts. [State ex rel. State Highway Commission v. Huddleston (Mo. App.), 52 S. W. (2d) 33, l. c. 35.]

The instruction could not have been misleading because it contained the positive direction that the jury could allow damages for the value of the land taken and for the damages to the remainder and that is all for which the landowner may claim damages under the rulings of our courts. The opening sentence of the instruction in express terms advises the jury that ''the defendants are entitled to receive just compensation for *any damage they may suffer as a* result of the location and construction of State Highway No. 66TR.'' (Italics ours.) No jury of any degree of intelligence could conclude that they could fail to allow the landowners for the value of the 6.21 acres permanently taken away from them by the condemnor, without violating this part of the instruction. If the defendants wished a better form of instruction they could have and should have offered an instruction clarifying what they deemed to be defective or confusing. [State ex rel. Kibble v. First National Bank (Mo. App.), 22 S. W. (2d) 185, l. c. 190; Brouster v. Shell Pipe Line Corp. (Mo. App.), 16 S. W. (2d) 672, l. c. 674; Klaber, Admr. of Jamison, v. Kansas City, 223 Mo. App. 684, 17 S. W. (2d) 621, l. c. 629; Walk v. St. Louis Can Co. (Mo. App.), 28 S. W. (2d) 391, l. c. 393; Reed v. Cullor (Mo. App.), 32 S. W. (2d) 296, l. c. 298; Kemp v. Doe Run Lead Co. (Mo. App.), 57 S. W. (2d) 758, l. c. 762; State ex rel. State Highway Commission v. Huddleston (Mo. App.), 52 S. W. (2d) 33, l. c. 35; State ex rel. State Highway Commission v. Southern Securities Co. (Mo. App.), 60 S. W. (2d) 632, l. c. 635; State ex rel. State Highway Commission v. Stoddard Gin Co. (Mo. App.), 62 S. W. (2d) 940, l. c. 942, 943; State ex rel. v. Jones, 321 Mo. 1154, 15 S. W. (2d) 338, l. c. 341.]

It is also urged by defendants that the instruction singles out or ''assumes that the defendants' right to the damages to the extent of

the value of the land taken was a disputed fact." The instruction clearly assumes some land was taken and that it had a value and that the jury could allow that value as damages to be offset by special benefits. The dispute really was as to net damages, whether the defendants were entitled to anything after the special benefits had been deducted. That was the issue as shown during the trial. It was resolved in favor of the plaintiff upon competent testimony and upon examination of the premises by the jury itself.

An instruction practically identical with the one under criticism in this case has lately been passed upon and approved in an opinion written by Judge McCULLEN of this court, viz.: State ex rel. State Highway Commission v. Southern Securities Co. (Mo. App.), 60 S. W. (2d) 632, l. c. 635. [See also State ex rel. State Highway Commission v. Stoddard Gin Co. (Mo. App.), 62 S. W. (2d) 940, l. c. 942, 943.]

It is insisted by defendants that the testimony of the witnesses in respect to the special benefits growing out of the construction of the highway through the property was based on the ignoring of the fact that there was a private road which led into this particular property. There is some reference to a private road which led into the property from that of some adjoining landowners, but from the description and photographs it was of little, if any, benefit to the premises in and of itself, as it appeared to be an unimproved dirt road running along a stream in a valley, extending and meandering in an irregular way into the premises to the old house which was located about 400 feet west of the east line of the eighty-acre tract, and such an outlet would be of little more, if any, value than the Indian trails which may have marked the premises in the early dawn of the nineteenth century when the Louisiana Purchase (which included this tract) was consummated by President Thomas Jefferson.

The plaintiff's instruction No. 12 is criticized by defendants on the ground that it casts the burden of proving damages on the defendant landowners and they cite the case of Bennett v. Woody, 137 Mo. 377, l. c. 384.

That case is not authority for the proposition advanced by defendants. The instruction in the Woody case was that before the jury could find damages for Woody they must have believed from the evidence that the damage exceeded the special benefit that would accrue to him. It did not suggest a finding on special benefits. No such requirement was made in instruction No. 12 in this case. It is well settled in this State that the burden of proving special benefits rests upon the condemnor and that the burden of proving damages rests upon the landowners. [State ex rel. State Highway Commission v. Malone, 45 S. W. (2d) 84, l. c. 86; State ex rel. State Highway Commission v. Huddleston (Mo. App.), 52 S. W. (2d) 33, l. c. 35, 20 C. J., p. 982, sec. 386.]

Defendants contend that the court erred in excluding testimony offered by them for the purpose of showing the cost and amount of grading necessary to put their land on a grade line with the highway. This excluded testimony is as follows:

"Q. How, Mr. Baumhoff, do you know about how much it would cost to fill in the south side of this valley—I mean the south side of this road, in order to level it with the road?

"Mr. Wehrle: One moment; we object to that because that is wholly irrelevant and immaterial to any issues in this case and it does not tend to prove or disprove any of the issues made by the pleadings, as to what it would cost in this eighty-acre tract of land or any portion of it.

"The Court: Objection sustained.

"To which action and ruling of the court the defendants, by their counsel, then and there duly excepted at the time and still except.

"Q. Mr. Dziatzko, did you make any estimate and can you give an opinion as to approximately what grading will have to be done in order to bring the property to grade?

"Mr. Wehrle: If Your Honor please, we object to that, for the reason it is wholly irrelevant and immaterial to any of the issues involved in this lawsuit.

"The Court: Objection sustained.

"To which action and ruling of the court the defendants, by their counsel, then and there duly excepted at the time and still except."

We think no error was committed by the trial court in its rulings because the defendants did not make a proffer of the evidence sought to be adduced. Even if proof had been made it would not follow that the answers would have been admissible under all conditions and circumstances. The eighty-acre tract having been described as full of hills and hollows it is apparent that the expense of bringing all portions of the tract to the same grade as the highway would have far exceeded the difference in market value as testified to by many witnesses and it is well established that where the cost of restoration of the property exceeds the difference in market value before and after the taking then the recovery must be limited to the depreciation in market value for the obvious reason that any other rule would permit a departure from the measure of damages which has been declared by our courts to constitute just compensation. [State ex rel. v. Southern Securities Co. (Mo. App.), 60 S. W. (2d) 632, l. c. 635.]

The answers to the questions, about which defendants complain, were also properly rejected on the basis that they would constitute an attempt to increase the damages beyond the true measure fixed by the courts. And there was no showing that it was not such an attempt. In the absence of any showing on behalf of defendants as to what the answers, if given, would have been, and no proffer was made of what the testimony sought to elicit would be, we cannot say that

1046

reversible error was committed in the exclusion of such testimony. [Brouster v. Shell Pipe Line Corp. (Mo. App.), 16 S. W. (2d) 672.].

Defendants in their brief concede that there are at least four places which permit ingress and egress between defendants' remaining land and the highway as constructed through same. Witness Arthur G. Taylor, who testified that the amount of the special benefits to the landowners exceeded the amount of the total damages sustained by them, based his conclusion on the fact that the construction of the highway made the remainder of defendants' land accessible to a public road, which was denied to it theretofore, and opened it up for use in making country estates and country homes of five or six-acre tracts, whereas, theretofore, from a residential standpoint it had purely and only a speculative value.

The jury, which was permitted to view the premises, necessarily saw and observed the alleged rugged topography of the eighty-acre tract, its hills, its valleys, its peaks, and its hollows, and the difference in grade as compared with the grade of the highway and the lack of uniformity between the two. Its verdict under such favorable and informative conditions should not be lightly regarded. The verdict of the jury having been approved by the learned trial judge, whose province it was to pass on the weight of the evidence, and we, as a reviewing court, having no such authority, but, by finding, as we do, substantial testimony to support the verdict, it follows that the judgment of the trial court should be affirmed and it is so ordered. *McCullen, J.*, concurs; *Becker, J.*, not sitting.