STATE OF MISSOURI EX REL. STATE HIGHWAY COMMISSION (PLAINTIFF), RESPONDENT, v. RALPH C. BAILEY ET AL., DEFENDANTS, KATHERINE MAENNER (SOMETIMES KNOWN AS CATHERINE MAENNER), SHAMROCK OIL AND GAS COMPANY, JOHN MUNZERT AND CLARA MUNZERT, APPELLANTS.—115 S. W. (2d) 17.

St. Louis Court of Appeals. Opinion filed April 5, 1938.

*E. McD. Stevens* for appellants.

*Louis V. Stigall* and *Lue C. Lozier* for respondent.

McCULLEN, J.—This suit was instituted by the State of Missouri at the relation of the State Highway Commission, hereinafter referred to as plaintiff, for the condemnation of land of appellants, hereinafter called defendants, in connection with the widening and improvement of State Highway Route No. 30, also known as Gravois Road, in St. Louis County, Missouri. Commissioners were duly appointed, and on November 23, 1932, they filed in court their award granting defendants the sum of $1350 damages. In due time plaintiff filed exceptions to said award, which were sustained by the court and a jury trial ordered. On June 6, 1933, the amount of said award was paid into court by plaintiff, and then paid to defendants. Thereafter, on April 11th and 12, 1935, a trial in the circuit court before a jury resulted in a verdict and judgment of no damages to defendants. Defendants' motion for new trial having been overruled, they appealed to the Supreme Court. That court held that it did not have jurisdiction of the cause and transferred it to this court.

Defendants were the owners of a tract of 3.8 acres of land in St. Louis County at the intersection of State Highway Route No. 30 and a St. Louis County road known as Laclede Station Road. Prior to the widening of Route No. 30 involved in this suit, defendants had donated to St. Louis County a strip of land on the east side of their property in connection with the construction of Laclede Station Road. When the construction of the last-named road was completed, defendant's land was on the northwest corner of the intersection of Laclede Station Road and Route No. 30. Defendant's land fronted upon Route No. 30 a distance of approximately one hundred and seventy-five feet. On the front part of defendants' land was located a filling station which had been formerly leased to the Shamrock Oil & Gas Company. West of the filling station was a hamburger stand on said land. Prior to the widening, three separate rock entrances led from Route No. 30 into the filling station. Out near the front of defendants' property were

airlines used for the purpose of servicing automobiles with air. There were gasoline pumps in the front part of the filling station.

Before the widening, the right of way of Route No. 30 was sixty feet wide. The paved portion was in the middle thereof, and was a concrete slab twenty feet in width with a ten foot rock shoulder on each side. The part of defendants' land taken by condemnation herein was a ten-foot strip off the front thereof, approximately one hundred and seventy-five feet in length. As a result of the widening work, the width of the paved part of Route No. 30 was increased to forty feet, a concrete slab ten feet wide having been added on each side of the old slab. The old slab was then covered with an asphalt surface, bringing it up to the level of the new side slabs. All the new paving work was done within the limits of the old right of way of Route No. 30. After the widening, the road was a four lane traffic highway with a lip curb, or gutter and having rock shoulders about ten to twelve feet wide. In making the improvement, plaintiff filled in a ditch that had existed in front of defendants' property running parallel with the old roadway on the old right of way of Route No. 30. The improvement, when completed, connected defendants' land with the highway right of way, thereby making said land accessible, along its entire frontage, from said Route No. 30.

There was evidence to the effect that defendants' property abutting on the new roadway required grading so as to make it accessible from the new roadway, and that defendants were put to an expense of about $850 in doing such grading. There was also evidence to the contrary on this, although it was conceded that defendants did do a small amount of grading where the hamburger stand of defendants' formerly stood. The evidence showed that there had been pipes under the three former entrances to defendants' property from the old road, and that additional pipe and rock could have been placed in the ditch in front of defendants' property and it could have been filled in at an expense ranging from $200 to $250. There was evidence on behalf of defendants that they were compelled to move the hamburger stand mentioned; that they were compelled to move the airlines from the front of the filling station to the side thereof.

Defendant John Munzert gave testimony to the effect that, by reason of the widening and the taking of the strip of land mentioned, the remaining property was depreciated in value in the sum of $5000.

August Boenecke, formerly a deputy tax collector of St. Louis County and at the time of the trial president of the Lemay Ferry Bank in St. Louis County, testified for defendants that the remaining property of defendants, after the widening, had sustained a depreciation of $4,120.50 in value.

There was testimony by witnesses on both sides that the front part of defendants' property fronting on Route No. 30, running for a distance of about one hundred and thirty-five feet northwardly, or

back from said route, was a valuable and desirable piece of property, but that the land at said distance back from the front line fell off abruptly and thence sloped down northwardly; that the entire tract ran back from the highway approximately one thousand feet. There was evidence to the effect that the value of the ten-foot strip of land taken by the condemnation herein was approximately $1500.

Testimony by witnesses for plaintiff was to the effect that, as a result of the widening of the road, the value of the remaining part of defendants' land had been increased between $5000 and $6000 in the opinion of one witness; $2000 in the opinion of another witness; and between $1700 and $3400 in the opinion of a third witness.

There was further testimony by plaintiff's witnesses, which was concurred in by some of defendants' witnesses, to the effect that the connecting of the right of way of Route No. 30 to defendants' land along its entire frontage, thereby making the entire front part of the land directly accessible from the highway, was a special benefit to the land. The testimony of defendant Munzert was strongly to the contrary. The witnesses who gave testimony to the effect that the improved accessibility was a special benefit, differed as to the value of such special benefit.

There was a conflict in the testimony as to whether the old ditch in front of the property in question had been unsafe and hazardous to persons patronizing defendants' filling station prior to the improvement. The testimony on behalf of defendants was to the effect that the ditch was not unsafe, whereas the testimony on behalf of plaintiff was to the effect that it had been unsafe. Plaintiff's testimony tended to show further that a beneficial result of the improvement was that, after the work was completed, water on the highway was carried away by the lip curb, or gutter, thereof, whereas prior to the improvement water had collected in the old ditch in front of the property and had to be removed from time to time.

Defendants contend that the only special benefit conferred, by the widening of Route No. 30, upon the land in question was the cost of piping, filling and rocking the ditch located on the old right of way, calculated at about $200; that the only additional benefit shown was the increased traffic because of the widened road; that this was a general benefit which could not be deducted from defendants' damages. The evidence of plaintiff, if believed, and the jury evidently did believe it as judged by their verdict, showed considerably more direct and peculiar benefits to the land in question than the mere cost of filling and rocking the ditch in front of the property. There is evidence to the effect that, prior to the widening, there were three narrow entrances from the old roadway into the filling station proper. As shown by photographs taken before the widening, a gulley or ditch extended between said narrow entrances along in front of the property and parallel with the highway. From such evidence and the

testimony of various witnesses, the jury were fully justified in concluding that the ditch was dangerous before the improvement was made, and prevented complete and safe access to all said land along its front. After the improvement was completed, that source of danger was removed for the reason that the ditch had been filled up and the land was directly connected with the right of way of the highway, so that vehicles could thereafter move into and out of the filling station freely and without danger practically on the same level as that of the highway itself and along the entire frontage of the property. Furthermore, the improvement eliminated entirely the possibility of water collecting in the ditch in front of the property as it formerly had done. There was ample evidence from which the jury could find that, after the completion of the widening of the highway, the front part of defendants' land was rendered more completely and safely accessible from the highway then it had been before the improvement, thereby affording a basis for the reasonable inference of an increase of market value as testified by plaintiff's witnesses. Not only did plaintiff's witnesses so testify, but, in addition thereto, one of defendants' witnesses, Boenecke, testified that the new lip curb on the pavement of the highway, whereby the water is now carried off which formerly went into the ditch, in itself was "a big benefit."

Defendants contend that plaintiff's Instruction number 11 was erroneous because it told the jury to deduct the value to defendants of the whole State highway as a special benefit. Defendants also contend that there was no credible evidence upon which to base Instruction number 12 because, as they argue, the damages exceeded the special benefits under all the evidence, and defendants were entitled to a verdict under all the evidence.

Plaintiff's Instruction number 11 complained of told the jury that the term "special or peculiar benefits," as used in the instructions, are benefits, if any, resulting in an increase in market value of the property because of its position directly on an improved highway; and these benefits, if any, are special benefits even though the jury should find them to be conferred upon all lands located immediately adjacent to the improved highway. The instruction then told the jury that, if they found from the evidence that special benefits, as so defined, had been conferred upon defendants' land "by virtue of the construction of Highway No. 30," such special benefits must then be considered in arriving at their verdict and should be set off against any damage the jury might find the defendants had suffered.

Instruction number 12 complained of told the jury that, if by reason of the special benefits, if any, conferred upon the land by the widening of the highway, they should find and believe from the evidence that the market value of that portion of the tract remaining after the widening was as much or more than was the value of the entire tract before the widening, then the verdict must be for plain-

tiff. What we have already said with respect to the evidence concerning special benefits shows that the complaint against Instruction number 12, namely that there was no credible evidence upon which to base it, is not well founded. We think the evidence was ample to warrant such an instruction.

Now, as to the correctness of instructions numbers 11 and 12, we are of the opinion that they correctly declared the law as laid down by our Supreme Court in State ex rel. State Highway Commission v. Jones, 321 Mo. 1154, 15 S. W. (2d) 338. In that case the court held that general benefits are not deductible from damages in proceedings to condemn a right of way for highway purposes; that general benefits are an advantage not peculiar to the remainder of the tract part of which is taken, but are such as are conferred by the public work upon all property within the range of its utility. As to special benefits, the court in that case held that they are such as accrue directly and proximately to particular land remaining by reason of the construction of public work on the part taken, and the benefit, though conferred upon several tracts of land similarly situated, may nevertheless be special and not general. The court further held in that case that whether a state highway does in fact confer a special benefit on adjoining land on account of its physical relation to it, is a question for the jury to determine.

This court, in a comparatively recent case, in an opinion by Judge Hostetter, reviewed at considerable length the subject of the measure of damages in condemnation cases, and, in affirming the judgment in favor of the State Highway Commission therein, said:

"While most of the witnesses who were interrogated on the question of damages and special benefits testified that the damages exceeded the special benefits in varying amounts, witness Arthur G. Taylor, called by the plaintiff, testified in effect that the special benefits exceeded the damages in the sum of $602.75, and, on being interrogated as to what he had taken into consideration in arriving at that conclusion, answered as follows: 'The fact that the property now is accessible to the outside, accessible to a public road;' and, further, that after the construction of this highway, the property was adaptable for use as country homesites in 5 or 6-acre tracts.

"The testimony of said witness is, in and of itself, substantial evidence that the property has been specially benefited by the construction of the highway in an amount in excess of the total damages sustained." [State ex rel. State Highway Comm. v. Baumhoff et al., 230 Mo. App. 1030, 1040, 93 S. W. (2d) 104, 110.]

Defendants further contend, however, that plaintiff's Instruction number 11 was erroneous because plaintiff could only set off by way of special benefits the State highway as widened because there was already a twenty foot concrete slab on said highway prior to the beginning of the improvement involved herein. This point of the de-

fendants has direct reference to the use of the words in the instruction "by virtue of the construction of Highway No. 30." It is unquestionably true that plaintiff was entitled to set off only special benefits accrued by virtue of the widening of the highway and not those accruing as a result of the original construction thereof. We are of the opinion, however, that the jury could not have been misled by the use of the phrase in the instruction which we have quoted above.

The whole controversy, as shown by all the evidence and the testimony of all the witnesses of all parties, had to do only with the widening of the highway and not with the original construction thereof. All of the other instructions covering the question made reference only to the widening of the road. In defendants' Instruction number 2 will be found the phrase "the widened road;" also "the construction of said widened road;" and further, "work done in the widening of said road;" and again, "the widening of said road." Defendants' Instruction number 6 contained the phrase "even though you find and believe that the widening of Route No. 30." Defendants' Instruction number 8, defining the terms "market value" and "consequential damage," refers to the "widening of said road and the establishment of grade thereof." Defendants' Instruction number 3 uses the phrase "widening of Route No. 30." Furthermore, plaintiff's Instruction number 12 refers to "the widening of the highway in question." Plaintiff's Instruction number 14 refers to "the highway work described in evidence."

In view of all of the evidence in the case and the other instructions to which we have referred, we do not believe we would be warranted in holding that plaintiff's Instruction number 11 is erroneous because we are satisfied the jury could not have been misled thereby into allowing benefits other than for those arising from the widening of the highway. We are not warranted in reversing a judgment unless we believe that the error committed was such as to materially affect the merits of the action. [Section 1062, Revised Statutes Missouri 1929 (Mo. Stat. Ann., sec. 1062, p. 1352).] Believing that the error complained of in the instruction was harmless, we rule against defendants on this point.

Defendants next complain of plaintiff's Instruction number 14. It is argued that said instruction was prejudicial because it permitted the State to change all the grades, drains, etc., of the old road in connection with the widening project, but limited the jury to a consideration of the new work done on the ten-foot strip and no other. The instruction complained of told the jury that the State was authorized, without any compensation whatever to defendants, to widen the concrete slab and do other necessary road building work within the confines of the State highway right of way owned by the State prior to the institution of this suit; and that, if the jury believed from the

evidence that any portion of the work described in the evidence was done on land already belonging to the State and dedicated to highway uses, then, in arriving at the damages to be allowed to defendants, the jury should allow nothing for the work, if any, so done within the confines of the right of way so owned by the State prior to the institution of this suit, even though such work, if any, may have inconvenienced the defendants or injured the market value of said property. We are of the opinion that said instruction was not erroneous. It is not disputed that defendants had placed pipe, rock and macadam on that part of the old right of way which lay between their property line and the old pavement, and had placed a small fence thereon, had done some landscaping and placed flowers there at an expense of about $225; nor is it disputed that all of said work had been done by defendants with the permission of the State Highway Commission. Defendants introduced evidence tending to show that the expenditures made by them on this part of the land constituted an element of damage for which they should be compensated. The instruction complained of merely withdrew from the consideration of the jury such expenditures by defendants as an element of damage. It is conceded that the State had owned that part of the right of way, and that it had been dedicated for highway purposes prior to the institution of this suit. Defendants were, therefore, merely permitted to make use of a part thereof at their own expense. Having taken advantage of the permission of the State to use the State's property, they certainly could not be allowed damages for expenditures made by them in moving off that part of the right of way when the State decided to avail itself of its right to use its own property for the purpose for which it was dedicated. If there had been no condemnation suit brought, defendants could not have claimed damages from the State for money spent in removing whatever they had voluntarily placed on the old right of way. It was their duty to get off the State's property at their own expense when the State undertook to widen the highway. [Showalter v. State (Ariz.), 63 Pac. (2d) 189; Tyler v. Town of Darien (Conn.), 162 Atl. 837.] Furthermore, there is nothing in the evidence tending to show that any of the construction work itself which was done by plaintiff within the confines of the old right of way constituted a damage to defendants' property. We find no prejudicial error in the instruction.

Defendants contend that the court erred in sustaining the objection of plaintiff to argument made by defendants' counsel to the jury. During his argument, defendants' counsel stated that he would "explain the law" as given to the jury by the court in the instructions. Referring then to plaintiff's Instruction number 14, defendants' counsel said: "In other words they can do anything they want with that ten foot strip that they have condemned in this suit, either

now or in the future. They can get Munzert off from this roadway, and the court tells you that in this instruction." Here objection was made by plaintiff. Proceeding further, after a colloquy between the court and counsel, defendants' counsel said: "They can cut them off anywhere on this roadway they went to. They can do any kind of work along there they want to." The court then sustained plaintiff's objection. We believe the court committed no error in sustaining the objection to such argument. There is nothing in Instruction 14 to warrant the view that plaintiff had the right to deprive defendants entirely of ingress and egress to and from their property in the future. Defendants contend that, under Section 8112, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., section 8112, p. 6898), and the sections immediately preceding, the State now acquires the fee in the property condemned and can fence, sell and do anything it desires with the right of way acquired; and that the argument made was proper. We know of no case by our Supreme Court or any of our appellate courts which holds that in a condemnation suit such as the case at bar it is proper to instruct the jury to award damages to the landowner because of the possibility of the landowner being deprived completely of ingress and egress to and from his remaining property adjoining a state highway. Defendants cite no such case. By said argument, defendants' counsel was undertaking to instruct the jury on the law. Instructing the jury is, of course, the province of the court. While counsel had the right to base his argument on instructions given by the court, he was not privileged to give instructions on the law different from those given by the court. Furthermore, we think the instruction sought to be given by counsel was erroneous. Defendants cite State ex rel. State Highway Commission v. Pope, 228 Mo. App. 888, 74 S. W. (2d) 265, and Shell Pipe Line Corp. v. Woolfolk, 331 Mo. 410, 53 S. W. (2d) 917, in support of their contention on this point. The cases cited do not support defendants' contention. On the contrary, in State ex rel. State Highway Comm. v. Pope, *supra,* cited by defendants, land had been condemned by the State Highway Commission both for right of way and for "sight view." Referring to a section of the statutes relied on by defendants in the case at bar, Section 8111, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., section 8111, p. 6896), the court, in the case cited, held that the owner of the adjoining property could use the land condemned for ingress and egress to and from the remaining property. The court there said:

"It is too clear for argument that defendants had that right within any reasonable limits just the same as he would have had the right to cross the ditch to the highway had there been no land condemned for sight view." [State ex rel. State Highway Comm. v. Pope, 228 Mo. App. l. c. 892, 74 S. W. (2d) l. c. 267.]

Shell Pipe Line Corp. v. Woolfolk, *supra,* cited by defendants, was a condemnation suit brought by the Shell Pipe Line Corporation for additional pipe lines on land belonging to the defendants therein, and is clearly distinguishable from the case at bar. In that case it was held that in a pipe line condemnation suit any reservation to the landowner should appear in the petition. In the case at bar the petition shows that the ten-foot strip of the land of defendants was taken for construction and maintenance of a state highway. Defendants were, therefore, entitled, as owners of adjoining land, to the right of reasonable ingress to and egress from their property. We hold that the court did not commit error in sustaining the objections to the argument referred to.

Defendants contend that the court's action in permitting the introduction in evidence of plaintiff's exhibit H was reversible error. This exhibit was a drawing or plat showing the location of defendants' property and the manner in which it was affected by the widening of the road.

John C. Miller, Assistant Right of Way Engineer for the State Highway Department, gave testimony concerning this exhibit. He testified that he was a graduate of the Engineering School of Missouri University, and had been practicing his profession for about twenty-five years; that he was personally acquainted with the property of defendants; that he had examined the plats on the title to the land in question and the properties immediately adjoining, and the deed descriptions thereof; that exhibit H was a copy made from the original plane table map which was later introduced by defendants as defendants' exhibit 2. Defendants' counsel was permitted very wide latitude in examining witness Miller for the purpose of determining whether or not exhibit H was competent before it was admitted in evidence. The witness testified at considerable length and in detail, explaining why certain data on the plane table map had been omitted from exhibit H; that the scale on exhibit H was fifty feet to one inch; that on said exhibit as well as on exhibit 2, from which exhibit H was made, distances were not measured directly but were measured by angles and scaled; that in such scaling an error of two or three feet to the inch might occur, but that defendants' exhibit 1, another drawing or map, and plaintiff's exhibit H were correct in limits. With respect to defendants' exhibit 1, it appears from the record that one of the jurors said: "It is pretty hard to understand if you don't know how to read it."

We have carefully examined the three exhibits mentioned, and we are of the opinion that the court did not commit error in permitting the introduction of plaintiff's exhibit H. It undoubtedly enabled the jury to get a clearer understanding of the "lay of the land" as well as of the testimony of the witnesses with respect to the old road, the widened road, and the position of defendants' property in connection

therewith. Defendants cite no Missouri case to support their contention on this point.

In Grady et al. v. Royar (Mo.), 181 S. W. 428, which was an action in ejectment, our Supreme Court held that the exclusion of plats made by county surveyors on the ground that the original plat was in evidence was error; that, although such plats were not competent as records, they were valuable aids in the explanation of testimony and were competent and admissible as explanatory of the county surveyor's testimony in respect to matters which might not otherwise have been fully understood. We think the doctrine of the Grady case, *supra,* is applicable in the case at bar. Defendants themselves offered in evidence the original plane table map from which exhibit H was made. A comparison of that exhibit with defendants' exhibits 1 and 2 shows that there was not absent from exhibit H any matter that was material. The court in permitting witness Miller to testify from exhibit H properly simplified for the jury a complex situation without in any way prejudicing any right of defendants. [See also Williamson v. Fischer, 50 Mo. 198.]

Defendants further contend that the court should have declared a mistrial because during a recess of the court two witnesses for the State, Fred H. Preutzel and William J. Horst, were seen conversing with a juror who lived in their neighborhood and was well known to them. Defendants state that the story told by each of the witnesses upon being examined with respect to the matter was very much at variance, and leads to the inevitable conclusion that they were talking about the lawsuit in question and attempting to influence the juror in his decision in the case; that the least the court should have done was to have called the juror into his chambers and questioned him as to such conversation. The record shows that counsel for defendants, at the time of the occurrence, made no such request of the court; but, on the contrary, stated to the court, when requesting an inquiry, that he "did not know that anything wrong had transpired." The court allowed counsel for defendants great latitude in examining the witnesses, and, concluding that nothing prejudicial to any one's rights had occurred, refused to declare a mistrial. We find nothing in the record to warrant interference on our part with the court's action in this respect. It was a matter within the discretion of the court, and we find nothing to indicate that the court abused its discretion. [McGuire v. Amyx, 317 Mo. 1061, 297 S. W. 968.]

Defendants next contend that the court erred in striking out of instruction number 3 offered by them the following:

"General benefits are those accruing to owners of property in the neighborhood or vicinity, generally, and under the law are not deductible from the damages defendant sustains, if any."

We find that defendants' Instruction number 5 was given by the court in the form requested by defendants. The jury were told therein:

"A general benefit is an advantage not peculiar to the remainder of defendant's tract of land, but is a benefit conferred by the public work upon all property within the range of its utility and as such, is not deductible from defendant's damages, if any."

We also find that defendants requested and the court gave Instruction number 6, as follows:

"The Court instructs the jury that even though you find and believe that the widening of Route No. 30 has caused an increased in the value of land common to the neighborhood or community, generally, arising from the supposed advantages which will accrue to the community by reason of this work or improvement in question, that such benefit is a general benefit and is not deductible from defendant's damages, if any."

We also find that the court gave defendants' Instruction number 7, wherein the jury were told:

"Increased facilities for travel for the public generally, are not such benefits as are chargeable by way of reduction of defendant's damages, if any."

Since the matter stricken out of Instruction number 3 was covered by the other instructions, to which we have referred above, we do not see how defendants were harmed. It is well established law that, where matters contained in refused instructions are properly and sufficiently covered in other instructions given, there is no error in such refusal. [Homan v. Mo. Pac. R. Co., 335 Mo. 30, 70 S. W. (2d) 869; Funcke v. St. Louis-San Francisco Ry. Co., 225 Mo. App. 347, 36 S. W. (2d) 977; Coyne v. Golland (Mo. App.), 243 S. W. 377.]

Defendants next contend that the court erred in striking out of Instruction numbered 4, offered by them, the following:

"Special and peculiar benefits are meant such benefits, if there are any, as are not common to other lands generally in the same neighborhood through which said road does run."

We find that Instruction number 11, given on behalf of plaintiff, contains the following:

"Special or peculiar benefits, as used in these instructions, are benefits, if any, resulting in an increase of market value of the property because of its position directly on an improved highway."

In plaintiff's Instruction number 10, the jury were told:

"You are instructed that while the defendants are entitled to receive just compensation for any damages they may suffer as a result of the location and construction of State Highway No. 30, yet such just compensation may be received either in the form of money or in the form of special benefits, or in the form of both."

In defendants' Instruction number 3 the jury were told that in estimating the damages, if any, to defendants' land, the jury will consider the quantity and value of the land taken for the widening of Route No. 30 "and the consequential damages, if any, to the remaining part of the defendants' land and improvements thereon, and deduct from these amounts the special benefits, if any, arising from the location and construction of the road through the same." By reading all the instructions together, it will be found that they present proper instructions on the subjects covered. [State ex rel. State Highway Comm. v. Jones, 321 Mo. 1154, 15 S. W. (2d) 338; State ex rel. State Highway Comm. v. Baumhoff, 230 Mo. App. 1030, 93 S. W. (2d) 104.]

The law is well settled that all instructions must be read and construed together, and the verdict will be sustained where they contain a complete exposition of the law and cover every phase of the case when taken together, even though they may be incomplete and objectionable when taken separately. [Jenkins v. Missouri State Life Ins. Co., 334 Mo. 941, 69 S. W. (2d) 666; McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S. W. (2d) 37; Roman v. Hendricks (Mo. App.), 80 S. W. (2d) 907.]

Defendants assign as error the action of the court in allowing witnesses Preutzel and Schubert to testify when said witnesses were not qualified to express an expert opinion as to defendants' property.

Prautzel testified that he was a truck farmer; that he had known the property in question for about thirty years; that he lived about a mile away from it; that he was a property owner and had bought and sold property in the community; that he was acquainted with the reasonable market value thereof, both before and after the widening.

Witness Schubert testified that he had lived in St. Louis County for about five years preceding the trial; that he was engaged in business in Affton, a nearby town; that he was acquainted with the tract of property in question; that he was an owner of real estate in the county; that he passed by the property in question often; that he had bought subdivision land and industrial land in the county; that he was acquainted with the reasonable market value of land of the type and character of defendants' land in and about that neighborhood.

The matter of determining whether or not such witnesses were qualified rested in the sound discretion of the trial court. [State ex rel. State Highway Comm. v. Craighead (Mo. App.), 65 S. W. (2d) 145; State ex rel. Highway Commission of Missouri v. Williams, 227 Mo. App. 196, 51 S. W. (2d) 538.] We find nothing in the record to show that the court abused its discretion in this respect. The evidence shows that the witnesses mentioned were competent to give opinions with respect to defendants' property. The weight to be given to their testimony was, of course, a matter for the jury.

Defendants contend that the court erred in allowing witnesses for plaintiff to give their opinions are to values before and after the

condemnation, and to take into consideration general benefits, such as increased facilities for travel by the public generally, in arriving at the increase in market value of defendants' property. State ex rel. State Highway Comm. v. Pope, 228 Mo. App. 888, 74 S. W. (2d) 265, is cited in support of said contention.

Plaintiff's witness Preutzel did not mention increased traffic in his opinion. Witness Fuerst not only did not base his opinion of increase in value upon increase in traffic, but, on the contrary, testified on cross-examination that in spite of decreased traffic, as testified to by defendant Munzert, he, witness Fuerst, was of the opinion that the value of the property was increased. The opinion of plaintiff's witness Schubert was not based solely upon increased traffic. In addition to the increase in traffic, witness Schubert, referring to defendants' property, said:

"He now has a macadam approach. Very high type. The approach is across the entire frontage of the property. It has access to both Gravois and Laclede Station road. It had access to both roads before; not the same type, however; . . . If those holes were there and no access to the property, that property would not have a very great value. It would be a greater value if the holes were there and filled in and you had access to the business property. Therefore, you cannot gauge the value by the few tons of earth and rock you put there, but you have to gauge it by the accessibility of the property now, for the purpose for which it is intended."

In the Pope case, *supra,* the trial court refused to give an instruction withdrawing from the jury testimony concerning value based upon increased traffic. Such refusal was held by the court to be error in that case. The court was not there dealing with the admission of the evidence. In the case at bar, the evidence concerning increased traffic was withdrawn by the court at the request of defendants when the court gave Instruction number 7 as follows:

"Increased facilities for travel for the public generally, are not such benefits as are chargeable by way of reduction of defendant's damages, if any."

There was no reversible error in the court's action.

An examination of the entire record fails to disclose any error at the trial prejudicial to the rights of defendants. There was ample evidence to sustain the verdict and judgment. It is, therefore, our duty to affirm the judgment. It is so ordered. *Hostetter, P. J.,* and *Becker, J.,* concur.