THE STATE EX REL. STATE HIGHWAY COMMISSION, Appellant, v. JUNIE E. JONES and JUNIE E. JONES as Executrix of Estate of W. Z. JONES.—15 S. W. (2d) 338.

Court en Banc, February 28, 1929.

*Edgar Shook, A. M. Meyer* and *Franklin Boyer* for appellant.

1156

*Gresham & Gresham* and *Eastin & McNeely* for respondent.

RAGLAND, J.—This proceeding was commenced in Platte County by the State Highway Commission for the purpose of condemning a right-of-way for State Highway No. 1, across the land of W. Z. Jones. The cause eventually found its way to the Circuit Court of Buchanan County on change of venue. On a trial to a jury in that court, Jones, the defendant, was awarded damages in the sum of $1800. From such award the Highway Commission in due course perfected this appeal. Pending the appeal Jones has died and the cause has been revived in the name of his executrix.

Jones owned a farm in Platte County consisting of four quarter sections lying in the form of a square, except for eighty acres, the east half of the northeast quarter—560 acres in a contiguous body.

The strip appropriated for the right-of-way was sixty feet in width and extended from the middle point of his south boundary northwestwardly, thereby cutting off from the main body of his land, at the southwest corner, a triangular tract of approximately 120 acres. All of the improvements—dwelling, barn, etc., and running spring sufficient to serve with water the whole farm, if employed in stock raising, were on the larger tract, and so cut off from the smaller tract by the proposed road. About six acres of land were taken for the right-of-way.

The road for which the right-of-way was condemned was a primary state highway, traversing the State from its northern boundary south through St. Joseph and Kansas City to its southern boundary. The sixty-foot roadway was to be graded and paved with the highest type concrete slab, eighteen feet wide, and was to have bridges and culverts of reinforced concrete and steel: the estimated cost of the road—for right-of-way and construction—was $40,000 per mile. It has now been constructed in part and is known as United States Highway No. 71.

* It seems that there were public roads along the south and west sides of Jones's land: they were roads of the old type—"dirt roads."

According to the estimates of the witnesses, the market value of Jones's land was from $150 to $250 an acre: Jones himself placed the value at the latter figure. As no ruling of the trial court touching the consideration by the jury of the value of the land taken and the damages to the remaining land by reason of such taking is called in question, there is no necessity for summarizing the evidence with respect to those matters. The controversy in this court hinges on a question relating to special benefits. As having a bearing thereon there was substantial evidence tending to show that the market value of Jones's land would be increased from $10 to $25 an acre by reason of its being "on the road," its "frontage on the road," its "accessibility" to the road.

At defendant's instance the trial court gave to the jury the following instruction:

"The court instructs the jury that in estimating damages growing out of the appropriation of defendant's land by the State Highway Department for a public road across said land, the jury should consider the quantity and the value of the land taken, and the damages, if any, to the tract of which it is a part, by reason of the road running through it, and from the sum of these should deduct the benefits, if any, peculiar *alone* to such tract arising from the running of the road through it, and by peculiar benefits is meant such benefits, as that land *alone* derives from the location of said road through it, as are not common to the other lands in the same neighborhood through which the road runs."

Another instruction given for defendant concluded as follows:

"And from such sum as you may so find, if any, you should deduct the benefit, if any peculiar *alone* to such, tract arising from the running of the road through it, and by peculiar benefits is meant such benefits as that land *alone* derives from the location of said road through it, as are not common to the other lands in the same neighborhood through which the road runs." ,

There were of course many other farms lying adjacent to the proposed road; it is obvious therefore that the instructions quoted, in limiting the benefits which could be deducted from the damages to those which were peculiar *alone* to Jones's land, in effect declared that as a matter of law frontage on the highway—immediate accessibility thereto—was not a special benefit. That is complained of as error.

I. Preliminary to a consideration of the specific question involved, the relation of special benefits to the just compensation to which the landowner is entitled, where a part of his property is taken for a public use will be briefly noticed. That relation is indicated in a general way in an instruction which has been so frequently given and so uniformly approved in railroad condemnation proceedings as to become a classic. It is as follows:

"In estimating the damages to the land in controversy, the jury will consider the quantity and value of the land taken by the railroad company for a right-of-way and the damages to the whole tract by reason of the road running through it; and deduct from those amounts the benefits, if any, peculiar to the said tract of land, arising from the running of the road through the same. And by peculiar benefit to that land, is meant, such benefits as that land derives from the location of the road through it, as are not common to other lands in the same neighborhood." [Quincy Railroad Co. v. Ridge, 57 Mo. l.. c. 601.]

General benefits, those accruing to the owners of property in a neighborhood or vicinity generally, are not deductible from the damages; to make such a deduction would be to require the landowner whose property is taken in part to liquidate his damages by contributing his share of the benefits which inure to the public as a whole. Special benefits stand on a different footing: they are such as accrue directly and proximately to the particular land remaining by reason of the construction of the public work on the part taken. Such benefits must of course be reflected in an increase in the market value of the land.

While there is often a contrariety of opinion as to whether the benefits in specific instances are general or special, the general distinction is well understood. "A general benefit is an, advantage not peculiar to the remainder of a tract part of which is taken, but conferred by the public work upon all property within range of its utility." [Randolph, Em. Dom., sec. 269, p. 250.] It is also well settled that a benefit, though conferred upon several tracts of land

similarly situated, may nevertheless be a special and not a general benefit.

"A special benefit is an advantage conferred upon a tract by reason of the maintenance of public work on it—an advantage differing in kind, or at least in great degree, from a general benefit. But it is to be noted, that an advantage is none the less a special benefit because it is conferred upon all the tracts of land upon which the public work is constructed. Indeed, a benefit may be special, although it is conferred also upon land not taken. Thus, where a street is widened by the condemnation of a strip of land along one side, the owner cannot complain because his remaining land is charged with a benefit which the widening necessarily confers upon lots on the opposite side." [Randolph, Em. Dom., sec. 270, p. 251.]

In St. L. O. H. & C. Ry. Co. v. Fowler, 142 Mo. 670, 673, 44 S. W. 771, a proceeding to condemn for the use of a railway company a right of way through land lying within the limits of the city of St. Louis, it was said by this court:

"But defendants insist that the benefits derived from switching privileges are not peculiar to their land, but are common to all land located on or near the line of the road, and therefore should not have been taken into account for the purpose of showing the real injury done to the residue of the land. It is probably true that lands adjacent to the road, which are not touched or damaged by the railroad, have the same advantage of switching facilities as is secured to the residue of the land of defendants after a portion has been appropriated. But we do not think that circumstance makes the benefits to defendants' land general within the meaning of the law which excludes general benefits from consideration in estimating the damage. A general benefit is an advantage 'conferred by the public work upon all property within range of its utility.' A special benefit is 'an advantage conferred upon a tract by reason of the maintenance of a public work upon it.' [Randolph, Em. Dom., secs. 269, 270.] As defined by Lewis: 'General benefits consist of an increase in the value of land common to the neighborhood or community generally, arising from the supposed advantage which will accrue to the community by reason of the work or improvement in question.' [Lewis, Em. Dom., sec. 471.] If defendants' land receives benefits, by reason of switching facilities, greater in degree than the advantages all the land in the community receives from the construction of the road, then it could be a matter of no importance that other land which receives no damages is also specially benefited. The widening of a street, by taking land from one side only, benefits the property on the other side though the owner bears no part of the damage caused by the improvement, yet the owner of the land taken may be charged with the special benefits to his remaining land. [Abbott v. Cottage City, 143 Mass. 521; Allen v. Charleston, 109 Mass. 246.] Switch-

ing privileges, such as are required by the statute to be provided, are only of advantage to those who own land 'near or within a reasonable distance of the railroad.' The benefits are not common to all the land in the community generally, but are special to the land which is so situated that they can be used." [See also Rives v. Columbia, 80 Mo. App. 173, 179.]

We come now to the specific question: Does an improved street or highway, by reason solely of its physical proximity to adjacent lots or tracts of land, confer upon such lots or tracts, a special benefit? Under exceptional circumstances it may not; but that it ordinarily does is unquestionably the generally accepted view.

In 20 Corpus Juris, page 824, note d., it is said: "When the land is taken for the laying out or widening of a way, there are two kinds of benefit which the remaining land may receive: The special and direct benefit arising from its position on the way; and the general benefit not arising from its location on the way, but from the facilities and advantages caused by the way. The direct and peculiar benefit may be considered, while the general benefit cannot be."

In 1 Elliott on Roads and Streets (4 Ed.) sec. 279, page 331, the author says: "It seems clear that if a narrow alley should be widened to a broad street and connection thus be made with much traveled streets, the abutters on the alley would, in the increased value of their property, supposing, of course, that the widening of the alley does add to the value of the property, receive a benefit not common to the public, but peculiar to the owners of the lots abutting on the alley widened into a street. Other illustrations will readily occur in which it is very evident that the benefit to the abutter is a local and peculiar one, although the public also receive from the same public improvement substantial benefit."

In 2 Lewis on Eminent Domain (3 Ed.) section 702, page 1216, the author says: "The benefits resulting from opening a street through property, whereby additional frontage is created or it is rendered more accessible, are special. So, where a street is widened, any increase in value in the part not taken, by reason of fronting on a wider street, is a special benefit. Benefits resulting from the location of a depot near the property in question have been held to be special in Massachusetts, Missouri and Pennsylvania, but otherwise in Texas and Wisconsin. Benefits by increased transportation facilities have been held to be special."

The law is thus stated in a quotation from Wilson v. Greenville Co. (S. C.), 96 S. E. 301, appearing in 20 Corpus Juris, page 825, note 90: "These special benefits usually find concrete expression in a comparatively greater increase in the value of such lands, though that may not be, and often is not, the only special benefit which they enjoy. But certainly, to the extent that the benefits accruing to those who own lands on the highway exceed those of their neighbors

whose lands are off the highway, they are special. A benefit that is limited in enjoyment to one or more persons is special to him or them. Therefore the fact that all persons who own lands adjacent to the road enjoy special benefits does not make such benefits general. A special benefit to one tract on the highway does not become general, because a like benefit is enjoyed by many tracts that are also contiguous to the highway. The benefit accruing to each tract is special to it."

The validity of the charter and ordinance provisions of the various municipalities of this State, relating to the assessment of the cost of opening or improving streets, in whole or in part, against abutting property, rests upon the presumption that the streets so opened or improved confer upon adjacent property benefits which are different in kind, or much greater in degree, than those they confer upon other property in the vicinity, and that such benefits are therefore special.

It is said in Mississippi County v. Byrd, 319 Mo. 697, 4 S. W. (2d) 810-812, that a benefit is special only "where the improvement affects the actual and usable value of the land and an increased value results therefrom." If that be the test, then the superior means of ingress and egress afforded by a highway to the owner of land which abuts directly and immediately on it is a special benefit.

"The right of a person to pass from his land immediately into a public highway, or to pass from a public highway immediately upon his land, is something valuable, and is certainly something special to him. It is true, that when he passes from his land into the public highway, then his right to travel upon the public highway is a right and a benefit which he enjoys merely in common with all the rest of the community; and for this right and benefit, whether valuable or not, nothing should be deducted from his damages. But the right to pass from his land directly into the highway, with the value of such right, whatever it may be, is a special right and benefit to him, and the value of such right and benefit may be deducted from the special damages which he has sustained by reason of the establishing of the highway." [Trosper v. Commissioner of Saline County, 27 Kan. 391, 394.]

"It appears that there are two kinds of benefit received by an estate bounding upon a way laid out, altered or widened: first, the special and direct benefit arising from its own position upon the way itself; and, second, the general benefit not arising from its location on the way, but from the facilities and advantages caused by the way, which affect all estates in the neighborhood equally, and which are shared in common with such estates. The direct and peculiar benefit may be set off; the general benefit cannot." [Hilbourne v. Suffolk, 120 Mass. 393, 394.]

We think it clear on both reason and authority that a highway, such as was contemplated in this proceeding, presumptively confers

upon adjoining land—on account of its physical relation to it—a special benefit; whether it does in fact in a given case (of the character of this) is for the jury. Mississippi County v. Byrd, supra, to the extent that it conflicts with the ruling here made, is disapproved.

The instructions given with respect to special benefits to which reference has been made were clearly erroneous.

The judgment of the circuit court is reversed and the cause remanded. All concur, except *Frank, J.*, absent.