248 S.W.2d 17 (1952)
STATE ex rel. STATE HIGHWAY COMMISSION
v.
McCANN et al.
No. 7028.
Springfield Court of Appeals. Missouri.
April 3, 1952.
*18 Claude T. Wood, Richland, Fields & Low, Lebanon, Neale, Newman, Bradshaw, Freeman & Neale, Springfield, for appellants.
Robert L. Hyder, Minor C. Livesay, Jefferson City, M. J. Huff, Wm. H. Robinett, Hartville, for respondent
VANDEVENTER, Presiding Judge.
This is a highway condemnation proceeding. The duly appointed commissioners found no damage for the defendant. Exceptions *19 were filed, change of venue was taken to Wright County and upon a jury trial, again it was found defendant was entitled to no damage. Defendants appealed.
There is very little conflict in the evidence except as to the amount of damages and benefits, which was largely the opinions of experts, so-called. The accompanying plat prepared by plaintiff, introduced in evidence by defendants, used by each during the trial and by stipulation of the parties filed here as an exhibit, shows defendants' farm, house and other buildings, and old and proposed roads in detail.

*20 The road for which the land was taken was known as Highway SA, Camden County and the west end connected Highway 54 a few miles north of Linn Creek. It ran from that point in an easterly direction to the Camden-Pulaski County line near Richland. Defendants owned a farm of approximately 320 acres on this route. In the center of this farm three and three-fourths forties are in a row, east and west, and the proposed right of way enters this row of forties at the N.W. Corner proceeds in a slightly south of east direction to about the center of the tract, then turns slightly northeastward, emerging from the farm at the northeast corner of the east of these forties. The right of way is 70 feet wide. There had previously been a road along the northern border of these particular forties separating them from a farm on the north. This road did not follow the line exactly, but did generally. The new right of way cuts off a strip of land on the north side of the farm containing approximately 39 acres (the acreage is shown on the plat), which tract of land is pointed at both ends, resembles in shape a narrow, straight slice off the bottom edge of a very large circle. It is approximately 240 rods long and 34 rods wide at the widest part, coming to a point at each end.
No under passage was provided for stock from this acreage to the south and well watered portion of the farm. The fencing of this right of way on both sides would require almost two miles of wire and posts. There is no water left in the thirty-nine acre strip, but previous to the acquisition of the right of way, there was a pond which had lately been built under government regulations, with a 210 foot dam, and which was valued from $120 to $150. Through this pond went the new right of way completely destroying it. Defendants, after the acquisition of the right of way and previous to the trial, had tried to build a small pond on the thirty-nine acres but the evidence shows their efforts were not very successful.
To the north of the east one of these forties were two other forties, extending north one-half mile, and on one of these forties was a small spring which the evidence shows furnished some, but not a great deal, of water. These two north forties were rough and wooded. Defendants' home and buildings were on the extreme southern edge of another forty acres due south of the third of the row of forties from the east, which placed his home and other buildings nearly one-half mile due south through the woods from the nearest point on the right of way of the new road and more than one-half mile from it when he travelled northeasterly along an old but good country road customarily used in going to Montreal or Richland. This road ran east and west near defendants' house and turned to the west thereof in a southwesterly direction across Wet Glaize Creek to another highway. This old road connected the new right of way at the west line of the east forty in the row. A short distance farther north, it connected with the old road on defendants' north line. Defendants' mail box was located on the old road across Wet Glaize Creek one-fourth mile from their home, at which point they received all their mail. It required 480 rods of woven wire, 824 common posts and 34 corner posts to build the fences on the either side of the new right of way. The woven wire cost $298 and necessary barb wire cost $71.60. Defendants' evidence showed the ordinary posts to be worth about 20¢ each and the corner posts about $1. Plaintiff's evidence showed ordinary posts to be worth about 10¢ or 12¢ and the corner posts between 50¢ and 75¢ each. There was no dispute as to the cost of the wire. It was admittedly acquired at a bargain price according to general prices at the time. In addition to all this was the labor in building the fence at about 50¢ per hour.
This farm was a stock farm for grazing cattle and before the right of way was acquired, it was all in one body and all accessible to water, which included two springs, a branch and Wet Glaize Creek, all south of the new right of way. There was some cultivatable land on the farm but the evidence shows that the only time it was cultivated was when the pasture thereon became bad and unfit for grazing, when it would be plowed up, cultivated and then reseeded. The right of way taken contained approximately eight acres, the value of *21 which was estimated at from $20 to $30 per acre. Photographs were introduced of the new right of way which showed land reasonably level. The old road on the north line could be travelled nearly every day of the year in hauling stock, etc., and a photograph of part of it, introduced in evidence shows a good smooth country road.
Defendants' witnesses testified that the entire farm was worth about $10,000 before the acquisition of the right of way and from $7500 to $8000 after its acquisition. The plaintiff's evidence showed that the farm was worth from $9,000 to $10,000 before the acquisition of the right of way and about $12,500 after the road was completed. But when asked upon what facts plaintiff's witnesses based their opinion of the increased value, their explanation included general, as well as special benefits and also included speculative benefits.
For instance: Ed Winfrey, a witness for plaintiff, who lived about six miles east of defendants' farm, testified that in his opinion the farm was worth $9,000 before the right of way was taken and would be worth $11,000 after the road was built. He said that some of his reasons for that opinion were, "on account of a good road through there." Another reason: "If a man owns land right up on the highway it is really worth more than it would be if it was setting back away from it, because if he wanted to put up some kind of a business, or sell off lots, or something, he would have the privilege of doing it."
When asked if he knew of anybody in that country that had ever cut up a piece of land and sold it for residential purposes, he stated:
"Yes, sir; I can show you, right along that highway, houses, several of them, built between me and where Mr. McCann lives, in the last few years, since the highway went in.
"Q. But they are on farms? A. Yes; but they don't buy them for farms, they buy a little lot and build a house on it and live in it."
But later on in his testimony on re-direct examination, he testified:
"Q. Did I understand you to say that some of the land adjoining this highway had been sold into lots? A. No, not in lots. The farm sold, a 230 acre farma 38 acre farm.
"Q. You said something about building along the highway, between there and Winfrey's? A. I said if a fellow wanted to sell off lots, and things, it would be a benefit to him."
When asked if defendants' farm enjoyed any benefits from the road that other farms in the neighborhood did not enjoy, he answered, "No, I guess they would all get the same, * * *. Well, they would all have the same privilege." He testified again that the benefits were the same to all the farms in the community and stated, "Well, some people have got to give a right-of-way some where. * * *"
Snode Perkins, a witness for the plaintiff, testified that in his opinion defendants' farm was worth $9,000 before the acquisition of the right of way and $12,000 afterwards. He estimated the value of the land taken and the damages to the defendant because of it being taken would amount to about $958.90, but in explaining why he thought the land was increased in value, he included general as well as special benefits.
Ray Eldred, Presiding Judge of the Camden County Court (which county, by the way, had a contract with the State Highway Department to pay for the right of way) gave his opinion that defendants' farm was worth $8,000 before the acquisition of the right of way and would be worth $12,000 when the highway was completed. But on cross examination, he could not tell the difference between special benefits and general benefits and stated that he thought the road benefitted everybody in the community, including himself who lived 25 miles from it.
Appellant complains of the giving of Instructions Nos. 5 and 6 and for an understandable discussion of those instructions, we must also set out 2 and 4. These instructions are:
Instruction No. 2.
"The court instructs the jury that in arriving at your verdict you should not consider and charge against the defendants the benefits, if any that *22 may accrue to defendants by reason of the construction of said road which are common to other landowners in the vicinity of said road, parts of whose lands are not taken.
Instruction No. 4.
"The court instructs the jury that the term special benefits as used in these instructions means any benefits causing an increase in the market value of a tract of land by reason of its position directly on an improved highway and which benefits are not enjoyed generally by other tracts of land in the neighborhood, no portion of which lands is taken by said highway; and such benefits are special and not general, although conferred, if you so find upon all the other tracts of land situated on the improved highway.
Instruction No. 5.
"The court instructs you that the just compensation to which the defendants may be entitled for any taking or damaging of their property by the construction of Highway SA, Camden County, may be received in the form of money or in the form of benefits, if any, which said property may receive because of its position directly upon said highway.
"In this connection, the court instructs you that if you believe the defendants have received any such benefits you must not return a verdict for them unless you find their damages, if any, exceed such benefits, if any, and then only for the amount of such excess, if any.
Instruction No. 6.
"You are instructed that you are the sole judges of the weight of the evidence and of the credibility of the witnesses, and you may give to the testimony of each witness such weight as you deem that it is entitled to under the facts and circumstances in evidence, and in determining that weight you will give to the testimony and opinion of any witness or witnesses you are not confined alone to the statement or statements of the witnesses, but you may take into consideration your own experience and observation in the common affairs of life."
Defendants assert that Instruction No. 5 would permit the jury to charge defendants with both special and general benefits, that it is confusing and inconsistent with Instruction No. 4.
We think the law is well settled that "special benefits" are such as are peculiar to a particular tract of land, enhances the value of such property in a manner peculiar to it, and not common to and enjoyed by other tracts in the same neighborhood, no part of which is taken. Special benefits must be reflected in an increase of the market value of the land. State ex rel. State Highway Commission v. Jones, 321 Mo. 1154, 15 S.W.2d 338; State ex rel. State Highway Comm. v. Lindley, 232 Mo.App. 831, 113 S.W.2d 132; City of Springfield v. Ellis, Mo.App., 97 S.W.2d 154; State ex rel. State Highway Comm. v. Farmer's Estate, Mo.App., 68 S.W.2d 721; State ex rel. State Highway Comm. v. Haid, 332 Mo. 606, 59 S.W.2d 1057.
A "general benefit", as applied to a person whose property is being condemned for a highway, is one common (though it may be in a greater or lesser degree) to all other landowners in the vicinity of such road, including those whose land is not taken as well as those whose land is partly taken. A landowner from whom some land is taken is chargeable with the value of special benefits but not the value of general benefits. To charge a tract of land with the value of general benefits is to require its owner to pay for a benefit common to others who are themselves exempt from such payments. State ex rel. State Highway Comm. v. Jones, supra; State ex rel. State Highway Comm. v. Hartman, 226 Mo.App. 604, 44 S.W.2d 169; State ex rel. State Highway Comm. v. Bank of Lewis County, Mo.App., 102 S.W. 2d 774; State ex rel. State Highway Comm. v. Bailey, 234 Mo.App. 168, 115 S.W.2d 17.
*23 But it is also the law that a benefit accruing to all lands similarly situated and bordering on a highway may, nevertheless, be special as to each of them, provided, they are not also benefits accruing to lands in the community which do not border on the highway, and, consequently, no part of which is taken. State ex rel. Highway Comm. v. Jones, supra; State ex rel. State Highway Comm. v. Hartman, supra; State ex rel. State Highway Comm. v. Pope, 228 Mo.App. 888, 74 S.W.2d 265; State ex rel. State Highway Comm. v. Williams, Mo.App., 69 S.W.2d 970; State ex rel. State Highway Comm. v. Young, 324 Mo. 277, 23 S.W.2d 130.
With these general definitions in mind, let us examine defendants' contentions.
Private property shall not be taken or damaged for public use without just compensation. Art. I, Sec. 26, Constitution of Mo. 1945, V.A.M.S. But the compensation going to the landholder, whose property has been taken, may be paid in cash or by special benefits, or by both.
First as to the defendants' damage. The State is taking eight acres of land in a strip seventy feet wide and approximately a mile long through the very heart of his pasture land. It completely destroys a pond, lately built, where his cattle obtained water. It isolates from water a tract of land containing approximately 39 acres, and practically destroys its usefulness as pasture for stock. There is no underpass so cattle can come to the south side of the farm and to water. To use the land north of the road at all, defendants are required to build more than three-fourths mile of fence. To pasture the land south of the road, they must build approximately one mile of fence. In his testimony, defendant McCann said it would cost several hundred dollars to build a fence on his north line after the old road is abandoned but we do not think this is a proper element of damage because the plaintiff is not requiring him to move that fence or relocate it from the place it has been for several years. His north line fence, as we see it is not affected by the building of the new highway.
However, this case is illustrative of the situation usually found in condemnation proceedings. The highway department seems to feel that if a landowner gets a new road through his place, he is benefitted more than any damage he can suffer, and the landowner thinks that any expense he has because of a newly built road, through necessity or for his own convenience, should be charged up to the highway department as damages. It is the duty of the courts to try to find the middle ground where justice lies.
There can be no question but that the defendants were damaged by the acquisition of this right of way. The serious question is, were there enough special benefits to off-set the damage? Each case depends upon its own facts and while the location of the roads, fences, houses and water is clearly and immediately apparent from an examination of the plat introduced in evidence, it is somewhat difficult to envisage the location of everything from a mere word description.
In the testimony there was evidence of general benefits and special benefits. There was also evidence of extremely speculative benefits. For instance, one witness testified that the defendant was benefitted because he could sell off lots for residences and business buildings along the highway. This was entirely speculative. State ex rel. State Highway Commission v. Pope, 228 Mo.App. 888, 74 S.W. 2d 265. The suburban urge is not yet so strong as to create a likelihood that business buildings and residence lots could be sold off in the middle of a cow pasture along a gravel road many miles from any place that by the wildest stretch of imagination could be considered urban. There is a vast difference between Gravois Road or U. S. Highway No. 66 adjoining Kirkwood in populous St. Louis County, State ex rel. State Highway Comm. v. Bailey, 234 Mo.App. 168, 115 S.W.2d 17; State ex rel. State Highway Comm. v. Baumhoff, 230 Mo.App. 1030, 95 S.W.2d 104 and Highway SA, Camden County, which traverses an uncultivated woodland. A traveler along this road might see defendants' land and decide to buy it and drill *24 for oil or mine for gold but to assume that such would happen would be highly speculative. But would it be more so than the assumption that defendants' wooded stock farm would soon blossom with business buildings and residences?
Now as to Instruction No. 5. The court told the jury that the just compensation to which the defendants may be entitled for taking or damaging their property by the construction of the highway might be paid in the form of money or in the form of benefits, if any, which said property may receive because of its position directly upon the highway.
The word "benefits" could include special benefits with the value of which the landowner could be legally charged and general benefits for which he could not, could even include those that were entirely speculative. In the second paragraph of the instruction, the court told the jury that if they believe the defendants had received "any such benefits" they could not return a verdict for the defendants unless they find their damages, if any, exceed "such benefits" and then only for the amount of such excess. Clearly this instruction, standing alone, would under the evidence presented, permit the jury to charge the defendants with general or speculative benefits which would, in effect, require them to pay for benefits enjoyed by all residents of the community but from which the other residents were exempt from paying.
It is argued, however, that the definition of "special benefits" in Instruction No. 4 should be read in connection with Instruction No. 5. That argument would be tenable if Instruction No. 5 had, instead of using the general word "benefits" used the words, "special benefits as in other instructions herein defined." This would have by reference included in Instruction No. 5, the requirements that the benefits to be considered were those enhancing its value and accruing by reason of its position directly on an improved highway and which benefits were not also enjoyed by other tracts of land in the neighborhood whose land was not taken for highway right of way. If there had been no evidence of general benefits and if part of the evidence of special benefits had not been speculative and conjectural, we are not saying that the defendants would have been damaged but we must construe the record as we find it and we think the instructions as given were so confusing to the jury that they may well have charged the defendants with general benefits. Their verdict of no damage, in view of all the facts, would so indicate.
While Instruction No. 4 defines the term, "special benefits", and it is conceded by both parties that this definition is correct, and tells the jury the meaning of "special benefits" as "used in these instructions", nowhere else in all the instructions do we find those words but merely the word "benefits" which could include special, general or speculative.
It is argued that Instruction No. 2, given by appellants, cures the generalties in Instruction No. 5. We do not think so. If anything, it makes the inconsistency more apparent and the confusion greater.
Objection is made to Instruction No. 6. This instruction told the jurors that they were the sole judges of the credibility of the witnesses and should give their testimony such weight as they deemed it was entitled to under the circumstances and facts in evidence, and in determining the weight to give to the testimony and opinion of any witness, "you are not confined alone to the statement or statements of the witnesses, but you may take into consideration your own experience and observation in the common affairs of life." As stated, there is very little, if any, dispute as to the actual facts testified to, but there is a wide difference in the opinions of the expert witnesses as to damages and benefits but these witnesses were testifying to opinions which were advisory only and though the witnesses disagreed as to the amounts, each could have been entirely honest in his judgment.
Appellants argue that this instruction would permit the jury to supplant the testimony of undisputed facts with what they thought the facts to be, based upon *25 their "own experience and observation in the common affairs of life". But the instruction does not say that they can disregard the undisputed facts or opinion but that they are not confined "alone" to those statements and opinions. They were in effect told that they might evaluate the testimony in the light of their own experience and observation. We think, under the facts in this case, it would have been better to have omitted this instruction, Kansas City v. Boruff, 295 Mo. 28, 243 S.W. 167, but are not prepared to say that the giving of it was reversible error. State ex rel. State Highway Comm. v. Stoddard Gin Co., Mo.App., 62 S.W.2d 940; State ex rel. State Highway Comm. v. Metropolitan Life Ins. Co., Mo.App., 157 S.W.2d 217.
We think the cause should be reversed and remanded for a new trial consistent with this opinion. It is so ordered.
BLAIR and McDOWELL, JJ., concur.