Alice F. THOMSON et al., Appellants-Condemnees,

v.

KANSAS CITY, Missouri, a Municipal Corporation, Respondent-Condemnor.

No. 23974.

Kansas City Court of Appeals.

Missouri.

April 6, 1964.

Charles E. Thomson, Kansas City, for appellants.

Herbert C. Hoffman, City Counselor, Ned B. Bahr, Asst. City Counselor, Kansas City, for respondent.

MAUGHMER, Commissioner.

This is a proceeding commenced by the City of Kansas City for the condemnation of private property for public use in the construction and maintenance of sanitary sewers. The City is authorized to do this under the provisions of Chapter 6, Charter of Kansas City.

In view of the errors alleged in the motion for new trial and preserved on ap-

peal we deem it unnecessary to set out the ordinances and pleadings filed. There is no question of sufficiency or jurisdiction.

Appellants Alice F., Bessie E., Renick A. and Tracy A. Thomson are the owners of an approximately 23 acre tract located near 35th and Eastern Avenue in Kansas City. Tracts No. 9 and No. 9A, as described in the City's petition, relate to this tract. No. 9 describes a line of approximately 430 lineal feet along and upon the Thomson property and contains an area 5 feet in width on each side of this line for use as a sewer right of way. After construction of the sewer this strip 10 feet in width will be covered over and may be used by the landowner, but the City retains an easement thereon. Tract 9A describes an additional strip 10 feet wide—5 feet on each side of Tract 9. The 9A easement is temporary and would terminate upon completion of the sewer construction—a period estimated to be not less than 6 nor more than 12 months. The plans provided for construction of only a sanitary sewer and not a combined sanitary and storm sewer.

A jury of six freeholders was duly empaneled by the Circuit Court of Jackson County as provided by Section 142, Charter of Kansas City. After hearing the testimony which was offered and after personally viewing and inspecting the premises, this jury returned its verdict in part as follows: "We, the jury find that the benefits equal or exceed the damages as to Tract 9 and 9A and award no dollars—$0.00". The court, after review of the verdict and consideration of the motion for new trial, confirmed the verdict and entered judgment accordingly, all in accordance with the provisions of Section 156, Charter.

Four points are presented on the appeal. The first two are basically legal conclusions and may be disposed of quickly. Point I declares "Private property cannot be taken nor damages for public use without just compensation". Both respondent and this

court agree that such is the law. Section 128 of the Charter so provides and in Section 26, Art. I, Constitution of Missouri, 1945, V.A.M.S., we find this admonition: " * * * private property shall not be taken or damaged for public use without just compensation. * * *"

■ Point II asserts that "Only special benefits, as distinguished from general benefits, may be off-set against damages for property taken by condemnation". There can be no question but that only "special benefits" as distinguished from "general benefits" are properly chargeable as an offset to damages. The court in State ex rel. State Highway Commission v. McCann et al., Mo.App., 248 S.W.2d 17, 22, said: "A landowner from whom some land is taken is chargeable with the value of special benefits but not the value of general benefits", and cited numerous supporting authorities.

■ Appellants' fourth point is that "The Charter of Kansas City requires a condemnation jury to both ascertain damages and assess benefits, and this jury has not followed the directives of the Charter in returning its verdict". In support of this view we are invited to examine Sections 149, 151 and 152 of the Charter and the case of City of Kansas City v. Baird et al., 98 Mo. 215, 11 S.W. 243, 562. It is appellants' position that the jury should have ascertained and stated separately in the verdict the dollar amount of the damages and the dollar amount of the special benefits, rather than simply finding "that the benefits equal or exceed the damages * * * and award no dollars". We do not believe the cited sections of the Charter specifically require that under this verdict the damages and benefits must be separately stated, nor does the Baird case so hold. In its Instruction No. 1 the court specifically directed the jury that if the special benefits "equal or exceed the damages to said tract or tracts, if any, from the proposed improvement, then you shall not

report an allowance for damages to such tract or tracts". Appellants in their motion for new trial complained only generally that Instruction No. 1 was contrary to law without pointing out any specific objection and no complaint whatever is presented on appeal as to Instruction No. 1.

In State ex rel. State Highway Commission v. Baumhoff et al., 230 Mo.App. 1030, 93 S.W.2d 104, 108, the court similarly directed the jury to deduct "the special benefits, if any".

The Supreme Court En Banc, State ex rel. State Highway Commission v. Jones et al., 321 Mo. 1154, 15 S.W.2d 338, 339, 340, speaking of the relation of special benefits to the just compensation to which the landowner is entitled where a part of his property is taken for public use, said:

"That relation is indicated in a general way in an instruction which has been so frequently given and so uniformly approved in railroad condemnation proceedings as to become a classic. It is as follows: 'In estimating the damages to the land in controversy, the jury will consider the quantity and value of the land taken by the railroad company for a right of way and the damages to the whole tract by reason of the road running through it; and deduct from these amounts the benefits, if any, peculiar to the said tract of land, arising from the running of the road through the same. And by peculiar benefit to that land, is meant, such benefits as that land derives from the location of the road through it, as are not common to the other lands in the same neighborhood.' Quincy, M. & P. R. Co. v. Ridge, 57 Mo. loc. cit. 601."

We rule against appellants as to Point IV.

■ The third and final assignment of error is an assertion that "The damages sustained by the appellants Thomson greatly exceed any special benefits assessable against their property". A ruling as to this contention requires not only consideration of the evidence adduced as to both damages and special benefits but a determination of the powers and functions of a charter jury of freeholders and an understanding of the sometimes close and sharp distinctions between "special benefits" and "general benefits". The usual condemnation proceeding (except where the Charter provides otherwise) contemplates use not only of commissioners but, if either party requests, also a common law jury. It is intended that the charter jury of six freeholders named by the circuit court be selected because of their experience and expertness as appraisers of property values. Such a jury apparently possesses the powers and exercises the functions of both commissioners and a common law jury. In addition, presumably because of their special qualifications, they may (Sec. 144, Charter) and in practice do, examine personally each piece of property condemned. In arriving at its verdict such a jury is not limited, as is the common law jury, to the evidence produced at the hearing or trial. In Kansas City v. Jones Store Co. et al., 325 Mo. 226, 28 S.W.2d 1008, 1016, the court, speaking of the powers of such a jury, said:

"A jury of freeholders is not limited to the evidence produced, as is a common-law jury. Such a jury, under section 144, art. VI, of the Charter of Kansas City, may examine personally each piece of property described in the map or plat filed in the case, all property claimed to be damaged, and the city engineer, the director of public works, or the superintendent of parks, or any assistant of any of them, may accompany such jury for the purpose of pointing out the property condemned. Thus the jury can reach a conclusion with or without the assistance of any evidence produced before them, having the benefit of expert assistance in the examination of the property.

The result reached is conclusive unless the court is satisfied that they have erred in the principle upon which they have made their appraisal".

This court recently expressed the same view in Proceedings for Condemnation of Private Property for Sixth Street Expressway, Kansas City v. National Engineering & Mfg. Co., Inc., Mo.App., 274 S.W.2d 490, 492, and said:

"It has been held that such a jury could have reached a verdict based solely upon its own examination of the property and that its verdict would be conclusive absent a showing that the jury erred in the principle upon which they made their appraisal".

Again in Kansas City, Mo. v. O'Donnell, Mo.App., 296 S.W.2d 914, 917, this court reached and stated the same conclusion.

Judge Vandeventer (State ex rel. State Highway Commission v. McCann, Mo.App., supra, 248 S.W.2d at pages 22, 23) assembled the authorities and restated the basic rules and distinctions as to special and general benefits. We quote from that opinion:

"We think the law is well settled that 'special benefits' are such as are peculiar to a particular tract of land, enhances the value of such property in a manner peculiar to it, and not common to and enjoyed by other tracts in the same neighborhood, no part of which is taken. Special benefits must be reflected in an increase of the market value of the land. (citing cases).

\* \* \* \* \* \*

"A 'general benefit,' as applied to a person whose property is being condemned for a highway, is one common (though it may be in a greater or lesser degree) to all other landowners in the vicinity of such road, including those whose land is not taken as well as those whose land is partly taken.

A landowner from whom some land is taken is chargeable with the value of special benefits but not the value of general benefits. To charge a tract of land with the value of general benefits is to require its owner to pay for a benefit common to others who are themselves exempt from such payments (citing cases).

\* \* \* \* \* \*

"But it is also the law that a benefit accruing to all lands similarly situated and bordering on a highway may, nevertheless, be special as to each of them, provided, they are not also benefits accruing to lands in the community which do not border on the highway, and consequently, no part of which is taken.

\* \* \* \* \* \*

"Private property shall not be taken or damaged for public use without just compensation. Art. I, Sec. 26, Constitution of Mo.1945, V.A.M.S. But the compensation going to the landholder, whose property has been taken, may be paid in cash *or by special benefits*, or by both". (Italics added).

In a recent case, State ex rel. State Highway Commission v. Vorhof-Duenke Co. et al., 366 S.W.2d 329, 337, 338, our Supreme Court En Banc made the following comment:

" 'Generally, the burden of proving *the existence* and *amount* of special and peculiar benefits is on the party seeking to condemn the land, although there is authority holding that certain improvements give rise to a presumption of benefit. The general rules of evidence in civil cases and proceedings govern and control the admissibility and the weight and sufficiency of evidence on the question of benefits'. Emphasis added. 29 C.J.S. Eminent Domain § 184, pp. 1067–1068. Numerous Missouri cases are cited in support of

these statements of law. In State ex rel. State Highway Commission v. Jones, 321 Mo. 1154, 15 S.W.2d 338, 341, the court held that a highway constructed where none had been before *presumptively conferred a special benefit on the adjoining land, but whether it actually did was a question for the jury to determine.* See also City of St. Louis v. Hamley Realty Co., 329 Mo. 1172, 48 S.W.2d 938, 940(6–8)". (Italics supplied).

■ If it be held that a new highway presumptively confers a "special benefit" upon the adjoining land, we think it follows that a sewer confers such a special benefit upon the adjoining land in a large city or in a residential or industrial area. However, in each case whether it actually does confer such a benefit is for the jury.

■ Analysis of the law by precedents as declared in the above quoted excerpts leads to certain terse conclusions: (1) Private property may not be taken for public use without payment of just compensation; (2) Only "special benefits" may be offset against damages; (3) The burden is on condemnor to prove the existence and amount of special and peculiar benefits although certain improvements give rise to a presumption of benefits, for example—a new highway where there had been none before; (4) The Charter jury may reach a verdict based solely upon its own examination of the property; (5) Such a verdict is conclusive absent a showing that the jury erred in the principles upon which they made their appraisal; (6) A sanitary sewer may, by a charter jury, be found to confer a special benefit on the adjoining land in a city or in a residential or industrial area; (7) If the jury verdict and judgment entered thereon finds support in the evidence (including the jury's own inspection) it may not be disturbed.

What is the evidence before us in addition to that obtained by the jurors through their personal inspection of the property? The only witness who testified for the City was Mr. Max Batman, an employee in the office of the city engineer. He identified a map showing the areas condemned and said only a sanitary sewer construction was planned. The City offered no expert testimony as to benefits, special or general, or as to damages. Mr. Batman described the proposed sewer construction and said it would be buried under ground and only the 10 foot easement would be retained permanently.

Mr. William E. Thomson was the only witness who testified for the condemnees. He said this 23 acre tract was purchased by his father in 1927 for a price of $500 per acre; that the family for many years had been "operating quarries and crushing stone"; that before buying this tract extensive exploration had been done on it and valuable limestone deposits known as Bethany Falls and Winterset ledges had been discovered underground. He stated that the area was wooded and the West 180 feet was zoned for heavy industry. This tract has not, during the 37 years since its purchase in 1927 by the Thomsons, been used for anything. Mr. Thomson said a demand was developing for these rock products and he expressed the opinion the 23 acres were worth between $9,000 and $12,000 per acre for such use which in his opinion was the highest and best use. To recover these rock deposits economically requires the use of high explosives and heavy blasting. In Mr. Thomson's opinion such blasting would probably damage the sewer and therefore the tract was severely damaged insofar as economic recovery of the rock deposits was concerned.

What was the situation and what evidence as to damages and special benefits was clearly apparent when this charter or freeholder jury inspected the premises? The City had taken an easement over a tract 430 feet in length and 20 feet in width for one year with a permanent ease-

ment covering the middle ten feet. When the sewer construction is completed the whole area will be covered over and likely will be disturbed very infrequently thereafter and then only for the making of repairs and connections for new users. The land covered by this easement is for normal uses still available to the owner. In this case no construction of any kind was disturbed and the diminution in value, if any, of the 23 acre tract was negligible insofar as any usual use is concerned. The damage might be substantial if the testimony of Mr. William E. Thomson were accepted at face value. He said this particular tract contained valuable rock deposits; that to secure these deposits was the motivating cause for its purchase in 1927; that the land was worth from $9,000 to $12,000 per acre but the existence of the sewer precluded the usual blasting operations required in reclaiming the rock deposits and therefore substantially damaged the property.

On the other hand, a part of this tract is zoned for heavy industry. Other buildings and construction are nearby, the presence of which must be considered before heavy blasting is done. Besides, the Thomsons have owned this property for 37 years. It remains now as it was when purchased—a wooded area. The jury might reasonably conclude that a rock quarry was not the only highest and best use to which the tract could be put; that blasting operations would not endanger the underground sewer any more than it would the above ground construction nearby, and that the value of the tract was not materially—but only nominally—damaged by the sewer.

■ As to special benefits, the sewer construction gives rise to a presumption of special benefit to the adjoining land. Certainly for many heavy industries or for residences it would be a value and confer a special benefit. As Judge Cave, speaking for this court in Kansas City v. O'Donnell, supra, said at page 917 of 296 S.W.2d:

"Furthermore, the jury personally inspected the property and proposed improvements, and under such circumstances, it has been held that such a jury could have reached a verdict based solely upon its own examination and that its verdict would be conclusive, absent a showing that the jury erred in the principles upon which they made their appraisal; *and no such showing was made in this case*". (Italics added).

■ We do not believe that the evidence, including the inspection of the premises by the jury, shows that "the damages sustained by appellants Thomson greatly exceed any special benefits assessable against their property". We believe the evidence is to the contrary. Upon and after review as required under the law, the trial court affirmed the verdict and entered its judgment thereon. There is no showing that the jury erred in the principles upon which they made their appraisal. And the verdict reached could certainly have been arrived at by the application of true and correct principles as those principles have been set forth herein.

Finding no reversible error, the judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.