**STATE of Missouri ex rel. STATE HIGH-WAY COMMISSION of Missouri, Respondent,**

v.

**BALLWIN PLAZA CORPORATION, a Corporation, Appellant.**

No. 50330.

Supreme Court of Missouri,

Division No. 1.

Sept. 14, 1964.

Motion for Rehearing or for Transfer to Court En Banc Denied Oct. 12, 1964.

Robert L. Hyder, Jefferson City, Samuel C. Ebling, Edwin B. Brzezinski, Kirkwood, for respondent.

Walter S. Berkman, St. Louis, for appellant.

HIGGINS, Commissioner.

This case comes to the writer by reassignment. The case is a condemnation suit in which commissioners awarded appellant the sum of $98,700. Both parties excepted and the jury verdict was for appellant in sum $20,000. Judgment was then entered against appellant upon such verdict for the difference between the award and verdict in sum $78,700. Appellant seeks relief from the judgment and, with the amount thereof being in excess of $15,000, the Supreme Court has jurisdiction. Section 477.040, RSMo 1959, V.A.M.S.

This action was instituted October 21, 1960, to acquire a part of defendant's land which abutted the north side of Route 100 (Manchester Road) in Ballwin, Missouri. This, together with other lands in the area, was being appropriated for the purpose of widening said Manchester Road between Manchester and Ellisville for a distance of about eight miles. The land taken from defendant was a strip 30 feet wide across the entire 883.10 feet of frontage containing 26,572 square feet. The defendant owned a "community shopping center" at the location in question, and the area taken was intended for parking. The date of taking was stipulated as April 25, 1961.

Route 100, or Manchester Road, runs generally east and west through St. Louis County. It was a 2-lane concrete roadway prior to the taking in question with each lane being nine feet in width. Access along

defendant's entire frontage was not limited before, or by, the taking. Prior to the taking defendant was permitted by the state highway commission to utilize its right of access via four entrances constructed along the north side of the road and ranging in width from 41 to 49.3 feet. The construction plans filed in connection with the condemnation petition provided for replacement of such entrances at approximately the same locations, all to be 50 feet wide. The planned construction would cause Manchester Road to become two lanes 12½ feet wide in each direction with a 10-foot shoulder on each side of the roadway. The shoulder was to be of oiled aggregate, a "stabilized shoulder," and by its use turning angles at the entrances would be wider. The road as thus changed was intended for vehicular travel at 40 miles per hour and the purpose of the changes was "to move traffic through the area in a more efficient manner."

Defendant's shopping center consisted of various store buildings constructed in a "U." The buildings contained approximately 155,000 square feet of floor space. The land taken was intended to provide 82 parking places. The parking area remaining after the taking provided 967 parking spaces. Although disputed by plaintiff, defendant produced testimony tending to show that this shopping center was short of parking space before the taking and therefore damaged by the loss of parking space. In an attempt to mitigate damages defendant purchased three adjacent tracts for replacement of the lost parking area.

There was evidence of damages adduced by defendant ranging from $105,250 to $300,000, and by plaintiff ranging from no damage to $15,000.

Appellant's principal contention on this appeal is that the trial court erred in the manner of its submission of special benefits to the jury.

Plaintiff had the burden of proving special benefits and presented the testimony of five witnesses on this issue. Such witnesses were experienced real estate appraisers. One testified that fair market value of the land and improvements prior to the taking was $2,433,181 and that it was $2,409,681 after the taking, a difference of $23,500. This witness further testified that he considered as special benefits *a better turning radius, the safety of ingress and egress by the shoulder and added lane and the width of the driveway*; that the value of these benefits was $8,500, leaving net damage of $15,000. Another witness determined a value before taking of $2,332,269 and after taking of $2,322,522, a difference of $9,747. This witness considered *wider entrances and larger turning radius, stabilized shoulders, and better flow of traffic* to be special benefits worth $10,955, and thus arrived at a figure of no net damage. Another witness for plaintiff placed the before value at $2,373,600 and the after value at $2,360,300, a difference of $13,300. He then allowed special benefits for the property being more accessible and easier to turn into *by virtue of the improved road conditions* and that the benefits were worth $28,464, a net benefit of $15,200. Still another witness placed the before and after values at $2,331,902, and therefore no damages. In other words, he offset the taking of the 30-foot strip, the loss of parking thereon, and any resulting damage therefrom, with special benefits which he considered to be "the placement of a four lane highway in front of the property * * *," *and better traffic flow*. Yet another witness placed the before value at $2,421,500 and the after value at $2,412,500, which latter figure included $8,500 for special benefits, leaving a difference of $9,000 as damages; that he considered *the expansion of two lanes into four lanes, the 10-foot stabilized shoulder and the widened entrances* as such special benefits.

Defendant was not without expert testimony on the issue of benefits as well as on its damages. Defendant called one witness who placed the fair market value of the entire property before the taking at $2,589,000 and at $2,400,000 after the taking. He

valued the land taken at $20,000 and the severance damage to the remainder at $169,000, a total damage of $189,000. Another witness for defendant placed the value before taking at $2,576,300. He valued the land taken at $15,950 and the severance at $178,500, a total damage of $194,450, rounded to $194,500. This witness testified that he would deduct from this figure the sum of $89,250 which he considered as an "economic" benefit. Prior to this item in his testimony, this witness had testified that the widening of the highway will help the property because the traffic will move faster and that *this same advantage will inure to all other properties in the entire vicinity*; *that all properties including property off the highway would be benefited,* "the entire area will be benefited." In connection with the value of such benefits the witness stated that *the property would be benefited the same or more if the parking area were not taken because it would have the additional parking* available on the 30-foot strip. The "owner" testified that the value of the center before the taking was $2,750,000, and $2,450,000 after the taking, a damage of $300,000. He disputed the benefits and advantages, testifying that *an easier flow of traffic* on the widened highway *would be a disadvantage because the widened road will have four lanes, making it more difficult to get into the shopping center; that the 4-lane highway will cause traffic to move faster and create a hazard.*

Appellant charges that Instruction 5 is an erroneous submission of the issue of special benefits. The instruction follows:

"The Court instructs you that the just compensation to which the Defendant may be entitled for any taking or damaging of its property for public use in the construction or widening of State Highway 100 may be received in either the form of money or in the form of special benefits, or part in the form of money and part in the form of special benefits.

"If you find from the evidence that the Defendant's property has received any ben-efits from the construction or widening of the Highway by the Plaintiff, as described in evidence, because of said property's position abutting directly and immediately upon the highway and which are not common generally to property off said highway in that Community, then such benefits, if any, are just compensation or payment for an equal value of property taken, or damage, if any, to the remaining property. And you are further instructed that such benefits are special and not general benefits, although conferred, if you should so find, upon all the other tracts of land abutting upon the new highway.

"In assessing such special benefits, if any, you may take into consideration the following items:

"1) The increased adaptability, if any, of the land for its use as a shopping center by means of:

"a) The smoother flow of traffic resulting from the construction of a 50-foot highway, consisting of four paved lanes immediately adjacent to the Defendant's property; and

"b) The construction of a stabilized shoulder 10 feet in width along the entire front of the Defendant's property; and

"c) The construction of four entrances, 50 feet in width, consisting partially of concrete paving and asphalt paving as described in the evidence immediately adjacent to Defendant's remaining land; and

"d) The widened turning angle of said four entrances, as described in the evidence.

"Therefore, if you believe the Defendant, Ballwin Plaza Corporation, has received *any such special benefits,* you should not give it any additional or further compensation or return a verdict for it unless you find its damages, if any, exceed such *special benefits,* if any."

Appellant contends among other things that by use of the language "any such special benefits" and "such special benefits," the items in "1)," "a)," "b)," "c)," and "d)," were submitted to the jury as special benefits when they were not special benefits; that it was, therefore, error for the court to authorize the jury to consider such items in reaching a verdict.

The generally accepted definitions of, and distinctions between, general and special benefits are contained in State ex rel. State Highway Commission v. Jones, 321 Mo. 1154, 15 S.W.2d 338, 340 [1, 2], and they are as follows:

" 'General benefits,' those accruing to the owners of property in a neighborhood or vicinity generally, are not deductible from the damages; to make such a deduction would be to require the landowner whose property is taken in part to liquidate his damages by contributing his share of the benefits which inure to the public as a whole. 'Special benefits' stand on a different footing; they are such as accrue directly and proximately to the particular land remaining by reason of the construction of the public work on the part taken. Such benefits must, of course, be reflected in an increase in the market value of the land.

"While there is often a contrariety of opinion as to whether the benefits in specific instances are general or special, the general distinction is well understood. 'A general benefit is an advantage not peculiar to the remainder of a tract part of which is taken, but conferred by the public work upon all property within range of its utility.' Randolph, Em.Dom. § 269, p. 250. It is also well settled that a benefit, though conferred upon several tracts of land similarly situated, may nevertheless be a special and not a general benefit.

" 'A special benefit is an advantage conferred upon a tract by reason of the maintenance of public work on it,—an advantage differing in kind, or at least in great degree from a general benefit. But it is to be

noted, that an advantage is none the less a special benefit because it is conferred upon all the tracts of land upon which the public work is constructed. Indeed, a benefit may be special, although it is conferred also upon land not taken. Thus, where a street is widened by the condemnation of a strip of land along one side, the owner cannot complain because his remaining land is charged with a benefit which the widening necessarily confers upon lots on the opposite side.' Randolph, Em.Dom. § 270, p. 251."

The principles announced by the Jones case were amplified in State ex rel. State Highway Commission v. Young, 324 Mo. 277, 23 S.W.2d 130, 134 [9], where the court said: "Granting there may be exceptions in unusual circumstances, it is not true ordinarily, at least, that if a tract receive benefits substantially greater in degree than those of the same nature accruing to other land in the community, the excess benefits thereby become special—in which event alone they may be offset against damages in a condemnation proceeding. As expressed in appreciation of market value, general benefits, themselves, may differ in amount or degree varying with the tract, its remoteness from the improvement, intrinsic character, etc. All the land in the community may not—almost certainly will not—receive the same general benefits in a monetary sense; and the general benefits derived by the particular tract in litigation might be greater than those enjoyed by any other land, and would be reflected in its increased value. *But only that part of the increase resulting from special benefits—those, if any, arising from the land's position directly on the highway improvement, such as availability for new or better uses, facilities for ingress and egress, improved drainage, sanitation, flood protection, and the like— would be chargeable.*

"The ultimate question in a case like this does not involve a determination of the amount of benefits in dollars and cents enjoyed by the land involved as compared

with *other* lands in the community. * * * *The true inquiry is how much of the augmented market value of the particular tract is attributable to special benefits.* Sometimes it may be helpful, in the solution of this question, to find out how the improvement affects other land in the community not on the highway; but if and when this is so, the facts are of value only as evidence on the main issue. While the distinction is sometimes hard to draw, *the rule in this state in the ordinary case is that special benefits are to be differentiated from general benefits by their nature or kind rather than by the amount or degree.*"

Even though these principles be generally accepted, difficulties arise in the application of these rules to the individual case. In 145 A.L.R. 48–49, the annotation states that "the distinction between special and general benefits is difficult and confusing in its application, because the line of demarcation between the two kinds of benefits is shadowy, and they so shade into each other that in practice it is often impossible to distinguish between them."

The language of these citations points up the need for simple and accurate language if the issue of special benefits is to be submitted.

Here it appears that the highest and best use of defendant's property was for a community shopping center both before and after the taking, and that access between the property and the highway was unlimited in both instances. The construction which permitted entrance from the highway to the property was located in the right of way before the taking and was to be located in the right of way after the taking. Under the evidence of this case it is difficult to see how the remaining property has acquired any enhancement of value not general to the area due to making it available for new or better uses or improving its access. In other words, the property taken was, at the time of taking, being utilized at its highest and best use as part of a community shopping center with unlimited access to and

from the highway. The same was true after the taking except that the taking itself occasioned a loss of 26,572 square feet of parking area which would accommodate 82 cars. The unlimited access enjoyed by the property was subject to reasonable traffic control before the taking and virtually the same restrictions are to be restored by the construction to be accomplished following the taking.

The Court went even further to permit the jury to consider in "a)" of Instruction 5 "the smoother flow of traffic" resulting from the construction of a 50-foot highway, consisting of four paved lanes immediately adjacent to defendant's property. We are unable to say that this phrase has any precise meaning. Does it mean a smoother flow of traffic on Manchester, a smoother flow in and out of Ballwin Plaza, or does it also connote more or better traffic?

This court has held that "traffic, great or small, is merely an incident of streets and highways and cannot be considered either as an element of damages or of benefits." State ex rel. State Highway Commission v. Turk, Mo., 366 S.W.2d 420, 422 [3]. See also State ex rel. State Highway Commission v. Pope, 228 Mo.App. 888, 74 S.W.2d 265, 269 [11].

A further concern with this language is whether it may be suggesting that the widening to four lanes of highway is limited to the front of defendant's property. These possibilities are indicative of a confusing and misleading instruction in an area in which clarity is necessary and may well have occasioned erroneous consideration by the jury of general benefits. State ex rel. State Highway Commission v. McCann, Mo.App., 248 S.W.2d 17, 24 [11, 12]. In addition, one of the disputed points was whether "smoother flow of traffic" was an advantage or a disadvantage. In such situation it is clearly error for the court to declare same as a matter for consideration as a special benefit.

By subsection "b)" the jury is authorized to consider the 10-foot stabilized shoulder

along the front of defendant's property as a special benefit. The evidence does not indicate that this same shoulder will affect defendant's property in any way different from all other lands in front of which it may pass. Here, too, is it the intention of the trial court to suggest that the shoulder is constructed only in front of defendant's property? The shoulder appears to be intended as a part of the increased facility for the travel and transportation of the general public and, as such, is not chargeable to defendant as an item of special benefit. Mississippi County v. Byrd, 319 Mo. 697, 4 S.W.2d 810, 812, 813 [6–9].

The jury was permitted by subsection "c)" to consider the construction of four entrances and in "d)" the widened turning angle at the entrances. These items, as well as item "b)," seem to gear plaintiff's case of special benefits to access. It is clear from the evidence that no new access was created. The quantum of access could not be increased since it was unlimited both before and after the taking. In Filger v. State Highway Commission, Mo.App., 355 S.W. 2d 425, 430 [1], it was held that a diminution of access by traffic islands constructed on the right of way does not give rise to damages. We think the entrances constructed on the right of way in this case are similar to the control islands in Filger. They might be said to diminish access in the sense that access is permitted only through such entrances rather than over the entire frontage, which is the true legal status of defendant's unlimited access. We recognize, however, the propriety of reasonable controls over the exercise of the right of access, which controls are subject to change from time to time as conditions may demand. Conversely, we believe that the fact that such entrances may, after the construction intended, be wider and provide a wider turning radius, cannot be charged to defendant as a special benefit for they may in turn be reduced as in Filger. They are not in fact an increase of already existing unlimited access. To sub-

mit such items to the jury for consideration as special benefits was error.

There was evidence from the expert witnesses that these items were considered by them as special benefits but such testimony does not prove the benefit. State ex rel. State Highway Commission v. Vorhof-Duenke Co., Mo., 366 S.W.2d 329, 340 [13]. In that case the court went on to say, l.c. 340 [15], "It is for the trial court in the first instance to say whether particular testimony tends to prove the existence of a special benefit. It is for the jury to say under all of the relevant testimony whether the abutting land was in fact specially benefited in the respect contended and, if so, to determine the amount thereof. *The courts and counsel have the responsibility of furnishing the jury effective guidance on the law of the case.*" Here the instruction complained of contains items submitted for the jury's consideration, all of which were prejudicial to the defendant in the respects noted. The plaintiff contends that by the asking and receiving of other instructions by the defendant on the issue of special benefits that the errors committed by the giving of Instruction 5 are cured. We have examined the whole charge to the jury and are unable to agree. The items contained in Instruction 5 are not special benefits as a matter of law under the evidence in this case and no amount of additional or clarifying instruction can remove the prejudice created by their submission for the jury's consideration.

For the giving of Instruction 5 containing the errors noted, the cause must be reversed for a new trial.

Since the case must be retried, we feel it unnecessary to discuss the other grounds for new trial mentioned in appellant's brief.

The judgment is reversed and the cause is remanded.

HOUSER, C., concurs.

WELBORN, C., dissents.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

HENLEY, J., concurs.

HYDE, P. J., concurs in result in separate opinion filed.

HOLMAN and DALTON, JJ., concur in result and concur in separate opinion of HYDE, P. J.

HYDE, Presiding Judge.

I concur in the ruling that giving Instruction No. 5 was prejudicially erroneous because it is my view that smoother flow of traffic on the highway is not an element of special benefits to adjoining land. We said in State ex rel. State Highway Commission v. Vorhof-Duenke Co., Mo.Sup. Banc, 366 S.W.2d 329, 339 (citing Mississippi County v. Byrd, 319 Mo. 697, 4 S.W. 2d 810, 813): "This court has held that increased facilities for the travel and transportation of the general public are not such benefits as may be deducted from the compensation and damages." Likewise in State ex rel. State Highway Commission v. Turk, Mo.Sup., 366 S.W.2d 420, 422, we stated: "Upon the more general subject, we have said that 'traffic, great or small, is merely an incident of streets and highways and cannot be considered either as an element of damages or of benefits.'" See also Wilson v. Kansas City, Mo.Sup., 162 S.W.2d 802, 805, and cases cited; State ex rel. State Highway Commission v. Pope, 228 Mo.App. 888, 74 S.W.2d 265, 269; Filger v. State Highway Commission, Mo. App., 355 S.W.2d 425, 428; Public Water Supply District No. 2 of Jackson County v. Alex Bascom Co., Mo.Sup., 370 S.W.2d 281, 287. Therefore, it is improper and incorrect to include the movement of traffic on a highway (greater or less, faster or slower, smoother or more congested) as an element of either special benefits or damages.

Furthermore, this instruction did not require a finding that any of the submitted items of special benefits would result in any increase in the market value of defendant's land. We said in State ex rel. State Highway Commission v. Jones, 321 Mo. 1154, 15 S.W.2d 338, 340, that special benefits "must, of course, be reflected in an increase in the market value of the land." It is my view that an instruction on special benefits should make this clear to the jury. Moreover, this instruction did not require the jury to find that any of these items were actually beneficial but instead seemed to assume that all of them would be beneficial and constitute special benefits. Therefore, I concur in the result.